601 So.2d 649 (1992)
STATE of Louisiana ex rel. Ira Joe MIMS
v.
Hilton BUTLER, Warden, Louisiana State Penitentiary.
No. 88-KH-2816.
Supreme Court of Louisiana.
May 26, 1992.
Elizabeth Cole and Terry E. Allbritton, Tulane Law Clinic, New Orleans, for plaintiff-applicant.
Richard Phillip Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., and Catherine Estopinal, Asst. Dist. Atty., for defendant-respondent.
Lennie Francis Perez and Alton Tracy Moran, Baton Rouge, for Public Def. Off. 19th Judicial Dist. Court, amicus curiae.
Helen G. Berrigan, New Orleans, for Indigent Def. Bd. 24th Judicial Dist. Court, amicus curiae.
G. Paul Marx, Lafayette, for Public Def. Prog. 15th Judicial Dist. Court, amicus curiae.
John Michael Crochet and John Francis LaVern, Lake Charles, for Public Def. Prog. 14th Judicial Dist. Court and Public Def. Prog. 38th Judicial Dist. Court, amicus curiae.
Ellis Paul Adams, Jr., for Louisiana Dist. Attorney's Assn., amicus curiae.
*650 Robert Stephen Glass, New Orleans, for LA Assn. Crim. Def. Lawyer, amicus curiae.
No Atty. Listed for Orleans Indigent Def. Bd., amicus curiae.

ON REHEARING
CALOGERO, Chief Justice.[*]
We granted certiorari to determine whether Act 688 of 1982, amending Louisiana's Habitual Offender Law, La.R.S. 15:529.1, legislatively repudiated nineteen years of jurisprudence which has consistently held that second offender status can only result from an offense committed after a first conviction, and third offender status can only result from an offense committed after a conviction which qualifies a defendant as a second offender. In our original opinion in this case, we held that the 1982 amendment legislatively overruled the Jackson[1] sequential requirement rule and that Mims' application for post conviction relief was properly denied by the court of appeal. We granted a rehearing on relator's application.
After further study, we find that R.S. 15:529.1 as amended by Act 688 of 1982 is vague and ambiguous. We conclude, therefore, that the amended habitual offender statute should be strictly construed and, moreover, that the doctrine of lenity requires this strict construction of the statute most favorably to the accused. As we interpret the statute, the sequential requirement for enhanced penalties in the sentencing of multiple offenders survives. The cornerstone of that scheme is that felons graduate to second offender status, not by committing multiple crimes, but by committing a crime or crimes after having been convicted. Relator Mims in this case is entitled to relief.[2]
Ira Joe Mims was convicted on November 22, 1978 of two felonies, attempted simple burglary and attempted simple robbery. These two felonies arose from independent criminal conduct on separate dates, needless to say, both prior to his first conviction. Mims was imprisoned until March 1983.
Subsequently, on January 12, 1985, he committed the crimes of second degree battery and purse-snatching for beating an elderly woman and stealing her purse (one incident). The State filed a multiple bill against Mims under Louisiana's Habitual Offender Law, La.R.S. 15:529.1, with the 1978 convictions used as predicate offenses. Mims was found guilty by jury verdict of both of the latter crimes. He received a penalty of hard labor in connection with concurrent sentences of five years (for the battery, unenhancedthe maximum) and thirty-five years (for the purse snatching, enhancedfive years short of the maximum for a third offender).[3] The court of appeal affirmed Mims' convictions and sentences. State v. Mims, 501 So.2d 962 (La.App.2d Cir.1987).
Mims filed for post-conviction relief in 1988 asserting that his thirty-five year sentence for purse snatching as a third offender *651 was improper because the two predicate convictions, in 1978, occurred on the same day. His application was denied by both the district court and the court of appeal. State v. Mims, 535 So.2d 1103 (La.App.2d Cir.1988). As already noted, after first granting his writ application, we denied Mims relief in our original opinion. Now, on rehearing however, we conclude that Mims was not properly a third offender upon committing either the second degree battery or the purse snatching because, although at the time of commission of each of these offenses he had earlier been convicted twice (attempted simple burglary and attempted simple robbery), he nonetheless had not been through the required sequencing of commission followed by conviction, then commission followed by another conviction. He had been brought before the bar of justice for a first time after committing both crimes in 1978. It was only the commission of the battery and purse snatching in 1985which succeeded the conviction for the first and second crimesthat qualified him as a multiple offender (in fact, a second offender as to each of the latter crimes).[4]
The Habitual Offender Law, La.R.S. 15:529.1, provides in part:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half [one-third prior to the 1989 amendment] the longest term and not more than twice the longest term prescribed for a first conviction.
(2) If the third felony is such that....
(3) If the fourth or subsequent felony is such that....
B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
. . . . .
*652 Prior to 1956, the habitual offender statute did not include § B by that designation or in content. It did, however, include the content of § A. Nonetheless, this court held in State v. Clague, 224 La. 27, 68 So.2d 746 (1953), and State v. Williams, 226 La. 862, 77 So.2d 515 (1955), surprisingly, that there was no sequential requirement in the statute; that is, that two felonies committed prior to a first conviction would support a thrice multiplied enhancement of sentence for a subsequent felony conviction (e.g., if two felonies are committed, and convictions follow, and then the felon commits another crime, he would qualify as a third offender even though he had not earlier been twice convicted in the proper sequence; i.e., crime, conviction, then crime, conviction). Indeed, this would be so even if the two predicate crimes arose out of the same incident. That was the case in Clague.
Apparently in response to this interpretation of the statute, the Legislature by Act 312 of 1956 engrafted a paragraph onto § 529.1 which contained the pre-1982 version of § B.[5] This amendment was considered to be a "legislative repudiation of the Williams case." State ex rel. Jackson v. Henderson, 283 So.2d 210, 212 (La.1973) (quoting Bennett, Criminal Law and Procedure, 17 La.L.Rev. 60-61 (1956)). The new paragraph (Section B) of Act 312 of 1956 contained two sentences. The first sentence provided:
It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as, and adjudged to be, a third offender, or that an offender have been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
This sentence clarifies, one might say, favorably to the prosecutor, that, in order to be charged as a multiple offender, a felon need not have been so labeled, and so adjudged, previously.
The second sentence stated:
Provided, however, that the offender shall be deemed a second offender only if the crime resulting in the second conviction shall have been committed after his first conviction; that one shall be deemed a third offender under this Section only if the crime resulting in the third conviction shall have been committed after his conviction for a crime which in fact caused him to be a second offender in the prior instance; and that one shall be deemed to be a fourth offender under this Section only if the crime resulting in the fourth conviction shall have been committed after his conviction for a crime which in fact caused him to be a third offender, whether or not he was adjudged to be a third offender in the prior instance. (emphasis added)
The jurisprudence interpreting this statute in the interim between 1956 and the 1982 amendment consistently held that under the Habitual Offender Law, second offender status could only result from an offense committed after a first conviction, and third offender status after a conviction which would have qualified as a second offender conviction, and so on. Jackson, supra; State v. Schamburge, 344 So.2d 997 (La.1977); State v. Taylor, 347 So.2d 172 (La.1977); State v. Chapman, 367 So.2d 808 (La.1979); State v. Simmons, 422 So.2d 138 (La.1982); State v. Lennon, 427 So.2d 860 (La.1983).
Consistently present in the statute from its inception by Act 15 of 1928, however, has been § A which sets forth the threshold requirements for habitual offender status. § A states:

*653 A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
... (emphasis added).
The above language provides for the sequencing which the second sentence of § B, placed into the statute in 1956, specified even more precisely.
In Act 688 of 1982, the Legislature amended the habitual offender statute. They made only some minor changes, while repealing the second sentence of § B. The first sentence of § B was re-enacted with only punctuation and grammatical changes. The act did not alter § A.
The State argues that the Legislature's deletion of the second sentence of § B indicates that they intended to return multiple offender sentencing to the pre-1956 era where, according to Williams, no sequential requirement existed and any number of felonies committed, even if all are committed prior to a conviction, are counted separately for sentence enhancement. Conversely, in its Amicus Brief, the Office of the Public Defender, East Baton Rouge Parish, argues that the deletion of the second sentence of § B has not changed § A's rather clear sequencing requirement.[6]
If the Legislature intended to change the law so as to permit enhancing punishment for subsequent crimes by simply adding up the number of prior crimes committed, they did a poor job. First and foremost, they did not change § A which continues to establish a multiple offender status only for a person committing a (subsequent) felony after having been convicted of a felony. Secondly, the title of the act is less than revealing if it were meant to reflect an intent to change the law.[7] And, thirdly, in the body,[8] the express reenactment of the first sentence of § B places the focus of the amending statute not on the sequencing but on the state's not having to charge and adjudicate second or third offender status *654 before multiple billing.[9]
Indeed, had the Legislature so intended, they might very easily have done to the multiple offender law what they did just four years before, in 1978, to the DWI statute. The DWI statute was amended immediately after this court had held, in State v. Neal, 347 So.2d 1139 (La.1977), that one could not be a second offender under the DWI statute unless the second offense occurred after the first conviction. In contrast to the 1982 legislation, Act 682 of 1978, both in the title and in the body of the act, informed of the scope and consequences of the proposed changes.[10] The title was "indicative of its object" as required by Article 3, Section 15 of the Louisiana Constitution of 1974 because it gave a basic understanding of the bill's content. [By contrast, the title of Act 688 of 1982 did not contain sufficient information to facilitate a comprehensive understanding of the significant changes assertedly encompassed within the bill.] The clarity of the title in the amending act concerning the DWI statute carried over into the provisions of the statute:
On a second conviction, regardless of whether the second offense occurred before or after the first conviction, the offender shall ...
An additional consideration weighing against the interpretation that the Legislature intended such a sweeping change in the multiple offender statute is that there was a nine year delay between this court's interpretation of the Habitual Offender Law in Jackson (La.1973) as requiring the appropriate sequencing of commission, conviction, etc., and the amendments to the statute in 1982. When the Legislature finally decided to amend, it could have expressed its intent in the crystal clear manner they had chosen in amending the DWI legislation, and they had a duty to state their intent affirmatively if the legislators meant to overturn years of jurisprudence and so drastically modify this criminal statute. This reality supports the likelihood that the 1982 amendment was simply a housekeeping amendment with very minor changes.
At the very least, the multiple offender statute as it currently reads is vague and confusing. It certainly cannot be said to be clear in not requiring sequencing, as the state argues. Did the Legislature intend to overrule nineteen years of jurisprudence by deleting the second sentence of § B without changing § A and its clear language requiring sequencing? Or did it intend merely to remove superfluous language, given the established and unquestioned rule enunciated by this court and followed by the circuits over the years until at least 1987?[11] Did the Legislature believe *655 that the language of § A, coupled with the prevailing jurisprudence provided sufficient guidance for courts to use in multiple offender sentencing? Of course, it is difficult if not impossible to discern the legislative intent since despite searches by counsel and the court no committee or floor debate materials have been uncovered.
Without the benefit of any clear indication of the Legislature's intent during the 1982 session, we turn simply to generally accepted methods of statutory interpretation. Criminal and penal laws are to be strictly construed. State v. McCarroll, 337 So.2d 475, 479 (La.1976); La.R.S. 14:3; State v. Gyles, 313 So.2d 799 (La.1975); State v. Penniman, 224 La. 95, 68 So.2d 770 (1953); State v. Truby, 211 La. 178, 29 So.2d 758 (1947). Furthermore, in interpreting criminal statutes, the doctrine of lenity is to be applied. We recently stated:
The principle of lenity directs that a court construe a criminal statute in favor of the most narrow application when there are serious doubts concerning a meaning of a term. See State v. McCarroll, 337 So.2d 475 (La.1976). Although the doctrine generally relates to the construction of the penalty provision of a statute, the same approach should be taken when a question arises as to the meaning of an otherwise ambiguous term in the definition of a crime.
State v. Ritchie, 590 So.2d 1139, 1149 n. 6 (La.1991).[12] Moreover, when a criminal statute is ambiguous, "we generally interpret the statute in a constitutional rather than an unconstitutional manner, and with lenity toward the defendant." State v. Lindsey, 491 So.2d 371, 374 (La.1986). In State v. Freeman, 411 So.2d 1068 (La. 1982), we explained that:
It is well established that criminal statutes are to be strictly construed and, in the absence of an express legislative intent, any doubt or ambiguity should be resolved in favor of lenity and not so as to multiply the penalty imposed. State v. Boniface, 369 So.2d 115 (La.1979); State v. Cox, 344 So.2d 1024 (La.1977). R.S. 14:3.
Freeman, 411 So.2d at 1072.
Because of ambiguity in the habitual offender statute, we will apply the well established principles of strict statutory construction, and lenity. Mims was exposed to the multiple offender enhancement under this sequencing, but only as a second offender, not as a third. He had committed two independent crimesalthough they might have been coincident crimes and the same rule would apply which resulted in the 1978 conviction. At that point, having been convicted, he was to be treated as a second offender upon commission of a subsequent felony. Thus, at the time of commission of the subsequent crimes of second degree battery and purse snatching, he could only be charged as a second offender.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed. Relator's thirty-five year sentence as a third offender for the purse snatching is nullified. The case is remanded to the district court to re-sentence Mims as a second offender for the crime of purse snatching.
REVERSED AND REMANDED.
*656 WATSON, J., dissents and assigns reasons.
COLE, J., and GAUDIN, J. Ad Hoc, dissent.
WATSON, Justice, dissenting.
While I agree that the result reached by the majority is fair and equitable, the law, as analyzed in the original opinion of this court, appears to be otherwise.
I respectfully dissent.
NOTES
[*] Judge H. Charles Gaudin of the Louisiana Fifth Circuit Court of Appeal participating in the case in place of Justice Pike Hall, recused.
[1] State ex rel. Jackson v. Henderson, 283 So.2d 210, 212 (La.1973).
[2] Louisiana Code of Criminal Procedure art. 882 provides in part:

A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.
[3] The differences in the enhanced penalties between purse snatching as a second offense and purse snatching as a third offense are not great. Each carries a forty year sentence, twice the longest term permitted. The respective minimums are six years, eight months for a second offense (i.e., one-third of the longest term for purse snatching) and ten years for a third offense (one-half of the longest term for purse snatching). La.R.S. 15:529.1 (prior to the 1989 amendment which raised the fractions for calculating the minimum sentence to one-half for a second offense and two-thirds for a third offense); R.S. 14:65.1. Nonetheless, there are adverse consequences to Mims which warrant correcting his sentence if illegally imposed. Sentencing with a lesser minimum, as a second offender rather than as a third offender, might well have affected the length of the sentence actually imposed by the district judge. And, adjudication as a third offender leaves Mims exposed to fourth offender status if he commits another felony in the future, with a sentencing range of twenty years to life.
[4] The sequence necessary for enhancement of sentencing under the Habitual Offender Law is commission of crime, or crimes, followed by conviction (equals a first offender), then commission of another crime, or crimes, followed by conviction (equals a second offender), and so forth. This concept of prior convictions preceding the commission of subsequent felonies for sentencing enhancement purposes has been referred to as both the "`one day, one conviction' rule of State ex rel. Jackson v. Henderson, [283 So.2d 210 (La.1973)], State ex rel. Porter v. Butler, 573 So.2d 1106, 1108 (La.1991), and the "sequential requirement," State v. Simmons, 422 So.2d 138, 146 (La.1982). However, these terms used interchangeably have served to further confuse the already complex multiple offender law.

Regarding the "one day, one conviction" rule, in Porter, this court explained that in a previous case, State v. Sherer, 411 So.2d 1050 (La.1982), the court had construed the Jackson rule as standing for the proposition that "convictions on more than one count entered on the same date should be treated as one conviction for purposes of the habitual offender statute, ..." However, the court continued its analysis by clarifying that the Sherer holding has been questioned and the rule actually requires a sequencing of the conviction followed by the commission of the subsequent felony for enhanced sentencing:
[I]t was not the fact that the predicate convictions occurred the same day, per se, that precluded the use of more than one conviction as a predicate in a subsequent prosecution, it was the fact that none of the offenses were committed after a prior conviction so as to legally classify the offender a second or third offender as required by the statute.
Porter, 573 So.2d at 1109.
In Simmons, we determined that "[t]he obvious intent of La.R.S. 15:529.1 is to set up a sequential requirement; the third felony must be committed after the conviction responsible for the second offender status." Simmons, 422 So.2d at 146.
[5] In the 1956 amendment, the portion of the statute that is now § A was called "Section 1." It contained the sentencing enhancement for second, third and fourth felonies under subsections (1), (2), and (3). What is now § B was, in the 1956 version, the second full paragraph of Section 1.

In 1978, subsections (2) and (3) were modified to provide what they presently set forth. See page 651 of this opinion for the current version of the statute.
[6] The Public Defender also pointed out some practical problems with the original opinion's effect on plea bargains that have already been negotiated. For example, what will happen in the many cases over the past nineteen years where defendants have pled guilty to multiple count plea bargains based on legal advice that they could only be considered second offenders when and if they commit another crime? That office estimates that over 90% of criminal prosecutions are resolved by plea bargains. Will the result mean a more lengthy sentence for defendants who relied upon what turned out to be erroneous legal advice (i.e., that each count pled will now be cumulated, thus creating, for sentencing purposes, a fourth offender status, or more, for many defendants)? Will those pleas all be subject to attack for being unknowing pleas or based upon advice of ineffective counsel since made under a misapprehension, facilitated in part by erroneous counsel?
[7] The title read:

AN ACT
To amend and reenact R.S. 15:529.1(B), relative to the determination of habitual offenders and time of commission and conviction of offenses, relative to time limitations for use of convictions for habitual offender purposes, and otherwise to provide with respect thereto.
[8] The body of the act read:

Be it enacted by the Legislature of Louisiana:
Section 1. R.S. 15:529.1(B) is hereby amended and reenacted to read as follows:
§ 529.1. Sentences for second and subsequent offenses; certificate of warden or clerk of court in the state of Louisiana as evidence.
* * * * * *
B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
* * * * * *
Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Act which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Act are hereby declared severable.
[9] Prosecutors in this state may, but are not required to, multiple bill a felon who qualifies as a second, third, or fourth offender. More often than not, prosecutors are satisfied with the sentencing range for serious felonies and opt not to multiple bill. Section B addresses that reality. It accounts for a prosecutor's not charging, and thus the felon not being adjudged, as say, a second offender, even though the felon qualified as such at the time. In this event, later commission of a felony will permit a charge and sentencing as a third offender notwithstanding that he or she had not previously been charged or adjudged a second offender.
[10] The title of Act 682 read:

AN ACT
To amend and reenact Subsections C, D and E of Section 98 of Title 14 of the Louisiana Revised Statutes of
1950 and to amend the Louisiana Code of Criminal Procedure by adding thereto a new Article to be designated as Article 487.1 of the Louisiana Code of Criminal Procedure, relative to driving while intoxicated, to provide that a person can be convicted for a second, third, or fourth offense for operating a vehicle while intoxicated regardless of whether arrest for that second, third, or fourth offense occurred before or after conviction of the earlier offense; and to provide for amendment of the indictment for that second, third, or fourth arrest to reflect such earlier conviction and to thus allow prosecution and conviction as a multiple offender.
[11] The first argument ever advanced by the State concerning its present theory on the intent and effect of the 1982 amendment (that it legislatively overruled the sequencing required in Jackson) appeared in State v. Franklin, 501 So.2d 881 (La.App. 5th Cir.1987), five years after the 1982 amendment. The Fifth Circuit concluded that:

Since the legislature could have clearly stated its intention if it chose to do so, and since it did not repudiate the rule established in the Simmons case by the 1982 amendment, for the reasons stated by Justice Dennis in the [State v.] Wimberly [414 So.2d 666 (La.1983) ] case we adhere to the rule established by the prior jurisprudence. Thus, the defendant here cannot be sentenced as a third offender because he was not convicted of the second offense ... until after the commission of the armed robbery for which he was convicted in this case.
Franklin, 501 So.2d at 884.
[12] We explained in McCarroll that:

"In deciding whether a defendant's conduct constitutes more than one violation of a federal statute the high court has held that when Congress has not explicitly stated the unit of offense, the doubt will be resolved in favor of lenity. This policy means that the court will not interpret a federal criminal statute so as to multiply the penalty that it places on an individual when the effectuation of any valid purpose of the statute would not require more than one penalty. Ladner v. United States, 358 U.S. 169 [79 S.Ct. 209, 3 L.Ed.2d 199] (1958) ...; Bell v. United States, 349 U.S. 81 [75 S.Ct. 620, 99 L.Ed. 905] (1955)...."
McCarroll, 337 So.2d at 479.