610 So.2d 142 (1992)
STATE of Louisiana
v.
Tim CORRY, a/k/a Tim Curry
No. 92-KA-601.
Court of Appeal of Louisiana, Fifth Circuit.
November 24, 1992.
*143 John M. Mamoulides, Dorothy A. Pendergast, Robert Grant, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
John D. Rawls, Indigent Defender Bd., Gretna, for defendant/appellant.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
The defendant Tim Curry a/k/a Tim Corry was charged, by bill of information, with simple burglary of an inhabited dwelling in violation of LSA-R.S. 14:62.2. After a jury trial on May 910, 1991 the defendant was found to be guilty as charged.[1] On May 29, 1991 the State filed a multiple bill of information charging defendant with being a fourth felony offender. The trial court began a hearing on the multiple bill allegations *144 on September 23, 1991 and continued the matter to allow the State time to file an application for supervisory writs concerning the admissibility of testimony by the defendant's former attorney. After this court granted the writ, ruling the testimony to be admissible,[2] the trial court completed the hearing on January 24, 1992 and found the defendant guilty as charged on the multiple bill. Thereafter, the defendant waived delays and was sentenced to serve twelve years at hard labor, the first five years without benefit of parole, probation or suspension of sentence on the current conviction for simple burglary of an inhabited dwelling. At the same time the trial court sentenced the defendant to serve thirty years at hard labor without benefit of probation or suspension of sentence on the multiple bill. Defendant was given credit for time served on both sentences. Defendant appeals his conviction and sentence. We affirm the conviction but vacate the sentence and remand the matter to the trial court.
Facts
On the morning of February 2, 1990, Francis Crochet was walking near his home on Bonnie Ann Street in Marrero. As he passed in front of the home of a neighbor, Bill Henry, he noticed the curtains moving. He then observed a man, later identified as the defendant, emerge from the side door of the residence carrying a bundle of clothes. Knowing that both Mr. and Mrs. Henry were employed and are not normally home at that hour, Mr. Crochet became suspicious and followed the man down the street.
When Mr. Crochet called out, the defendant began to run away. Crochet called out to his wife to call 911 and report the incident to police. He continued to follow the intruder but lost sight of him at the corner.
Shortly thereafter Officers Kerwin and Adams of the Jefferson Parish Sheriff's office arrived on the scene in response to Mrs. Crochet's summons. Officer Adams took a description of the intruder and an explanation of the circumstances from Mr. Crochet and subsequently broadcasted the physical description of the suspect over the radio to all police units nearby.
The officers approached the house and discovered a side door had been forced open. Upon further investigation the officers discovered that, in one of the bedrooms drawers were open and ransacked and an empty jewelry box was laying open on the floor.
At this point Officer Kerwin returned to his vehicle to search for the subject while Officer Adams began a search of the area on foot. When Officer Adams walked to a canal nearby he noticed there were slide marks on the banks on either side, indicating that someone had recently crossed the canal on foot. He also observed one pair of jeans in the canal and several other pairs on the bank of the far side of the canal.
At that time Officer Stephanie LeGlue, who was patrolling the area, spotted a man matching the subject's description sitting in a truck parked in a supermarket lot separated from the victim's home by a canal. She radioed for assistance. Both Officers Kerwin and Adams responded to the call. They approached the subject and asked him to get out of his truck. When he responded to the request the officers noticed the subject was wearing blue jeans caked with wet mud from the knees down. The officers also observed several pieces of jewelry on the floor of the truck. Shortly afterward Mr. Crochet identified the defendant as the perpetrator and an arrest was made. Subsequently, Bill Henry identified as his property the jeans found in the canal and the jewelry found in defendant's truck.
The defendant assigns four errors on appeal. In the first, he argues that he was arrested as a result of an illegal stop.[3] His argument is based on the description given by Mr. Crochet. At trial Mr. Crochet described the man he saw running from Mr. Henry's house as "about six foot tall, kind *145 of blondish, had a receding hair line, and had a white shirt on and blue denim pants." In his testimony at trial Mr. Crochet made no mention of a beard. The defendant, at the time of the arrest was barefoot, shirtless and had a full beard.
Officer Adams testified both at the motion to suppress hearing and at trial that immediately after the incident Mr. Crochet described the suspect as having a beard. Officer Kerwin testified that the description of the suspect he put out over the police radio at the time included a beard. Officer LeGlue verified that, in response to her inquiry just before the defendant was stopped, she was informed that the suspect had a beard.
The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution prohibits unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Belton, supra; State v. Rosales, 537 So.2d 850 (La.App. 5th Cir.1989). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton, supra.
Furthermore, knowledge that an offense has been committed is often a critical element in establishing reasonable cause. When the officer making the stop knows a crime has been committed, he has only to determine whether the additional trustworthy information justifies a man of ordinary caution to suspect the detained person of the offense. State v. Bickham, 404 So.2d 929 (La.1981).
We believe in this instance the officers had reasonable cause to justify a stop. They knew that a crime had been committed about one and one-half blocks from where defendant's truck was parked and he fit the description given at that time. The fact that the defendant was not wearing a shirt at the time he was stopped is of no moment since shirts are easily removed. We find the officers had articulable knowledge of particular facts sufficient to reasonably suspect the defendant had committed a crime since he was spotted in the close vicinity shortly after the crime and matched the description of the perpetrator. This assignment lacks merit.
In his second assignment of error the defendant asserts the trial court erred in denying the defendant a physical lineup. He argues there was no reasonable basis for Mr. Crochet's identification.
An accused has no constitutional or statutory right to a lineup. However, a trial court has broad discretion to order such a lineup in the interest of the fairness of the identification of the defendant upon proper showing of an exceptional nature that otherwise the trial testimony as to his visual identification may not be reliable. State v. Boettcher, 338 So.2d 1356, 1361 (La.1976).
To determine if an exceptional nature exists which would warrant the necessity of a physical lineup, the five factor reliability test of Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), should be implemented. These factors include:
(1) the opportunity to view
(2) the degree of attention
(3) the accuracy of the description
(4) the witness' level of certainty
(5) the time between the crime and the confrontation
State v. Calzadilla, 455 So.2d 1244 (La. App. 4th Cir.1984).
*146 Crochet observed the defendant as he emerged from the Henry's residence and when the defendant began walking down the street, he followed him. Crochet was able to view the defendant again when he yelled at the defendant and the defendant turned around before running away.
Crochet viewed the defendant from a distance of at least 50 feet. Although he was not wearing his bifocal glasses at that time, he stated that he does not need them to see at a distance and that "it's about the same with glasses on and without." Additionally, the burglary occurred at approximately 11:00 in the morning and it was a "beautiful day."
Crochet failed to mention that the perpetrator had a beard when describing his appearance while testifying at trial. However, Officer Adams testified that when Crochet initially provided a description of the subject he stated that the subject had a beard and both Officers Kerwin and LeGlue testified that the description broadcasted indicated that the subject had a beard.
Furthermore, Crochet positively identified the defendant as the perpetrator in a one-on-one, in-field identification which was closely associated in time with the commission of the crime. One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. Such identification procedures are generally permitted when the accused is apprehended within a short time after the offense and is returned to the scene of the crime for on-the-spot identification. A prompt in-the-field identification, under appropriate circumstances, promotes accuracy as well as expediting the release of innocent suspects. State v. Bickham, supra.
We find no reason to question the witness' ability to make an accurate identification in this instance. Thus, we do not find there was a substantial likelihood of misidentification. The trial court did not abuse its discretion in denying defendant's request for a pretrial lineup. This assignment is without merit.
In his third assignment of error the defendant avers that he was entitled to an evidentiary hearing to determine whether the arresting officer's recollections of the arrest were hopelessly tainted by an altered version of their initial report.
At the motion to suppress, defense counsel, while cross examining Officer Kerwin, learned that the police report provided to him in response to discovery did not mention a beard while the district attorney's copy of the report had been altered to reflect such. Thereafter, defense counsel cross-examined the officer concerning which report was correct and Office Kerwin stated that based upon his investigation of the incident the district attorney's copy was the correct one. He further stated on redirect examination that he remembered that the description broadcasted included a beard.
Defense counsel also cross-examined Officer Adams at the motion to suppress concerning the altered report. During his examination, Officer Adams testified that he had reviewed the altered police report before testifying. When questioned why he did not indicate in the report that the defendant had a beard, he testified as follows:
A. I wrote the report after the arrest was already made, yes, sir. In other words, when I got to the scene my first interest was to secure the scene and make sure that there was nobody in the residence and then try and locate the perpetrator.
Q. Well, I understand that you wrote this report after Mr. Curry's arrest and he was booked and everything else.
A. Yes, it's not uncommon for me to possibly leave out a beard or something like that on the report.
* * * * * *
Q. Don't you consider a beard to be a identifying characteristic, especially when you are talking about a white male, six feet tall, 160
A. Well, I would, if I was still looking for the perpetrator. But since the perpetrator was already identified by a witness, *147 I didn't seeyou know, I am sure that had I thought it extremely necessary, I would have put it down. If I was still looking for a perpetrator of this crime, it would have been in there. But, since we already had a positive identification
Defense counsel then called Officer LeGlue as a witness and when questioned about the description of the subject she stated:
It was a white male with light hair. About mid-thirties. He had a white tee shirt on. I asked if he had facial hair and the deputy told me yes. At that time I told him I had a subject fitting the description.
She subsequently testified that she had an independent recollection of the description and did not read the police report before testifying.
The following day defense counsel moved for an evidentiary hearing to determine whether the officers' testimony had been tainted by the altered police report and the trial court denied the motion.
Under these circumstances we find no abuse of the trial court's discretion. Defense counsel was afforded ample opportunity to determine if the officers' testimony was tainted by the altered report at the motion to suppress. Moreover, Officer Kerwin testified that he remembered that the description of the subject included a beard and Officer LeGlue testified that she remembered being advised that the subject had facial hair in response to her question. Officer Adams, after testifying that the description included a beard, accounted for its omission in the police report when questioned by defense counsel. This assignment lacks merit.
In his final assignment of error the defendant asserts that the commitment does not accurately reflect the sentence pronounced in open court. Because we vacate the sentence on other grounds we pretermit a full discussion on this assignment.
The defendant's adjudication as a fourth felony offender was based on convictions of three prior felonies, two of which were the result of guilty pleas entered on the same day. Recently, the Supreme Court in State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), found that LSA-R.S. 15:529.1 as amended in 1982 is vague and ambiguous and should be strictly construed. The court interpreted the statute to include a sequential requirement for enhanced penalties in the sentencing of multiple offenders. "The cornerstone of that scheme is that felons graduate to second offender status, not by committing multiple crimes, but by committing a crime or crimes after having been convicted." State ex rel Mims v. Butler, supra at 650. The court further noted that "The sequence necessary for enhancement of sentencing under the Habitual Offender Law is commission of crime, or crimes, followed by conviction (equals a first offender), then commission of another crime, or crimes, followed by conviction (equals a second offender), and so forth." State ex rel. Mims v. Butler, supra at 651, footnote 4.
The defendant pled guilty on May 22, 1985 to simple burglary (LSA-R.S. 14:62) in case no. 85-711 in Jefferson Parish District Court. On that same day, he also pled guilty to two counts of simple burglary (LSA-R.S. 14:62) in case no 85-712 in Jefferson Parish District Court. Because the convictions were entered on the same day, they fail to meet the sequential requirement as set forth in Butler. Accordingly, the State cannot use both of those guilty pleas to enhance the defendant's multiple offender status. Accordingly, we vacate the conviction and sentence on the multiple bill.
Defendant was also sentenced on the simple burglary of an inhabited dwelling conviction to serve twelve years at hard labor, the first five to be served without benefit of parole, probation or suspension of sentence with credit for time served. That sentence may have been vacated by the trial judge upon imposition of the thirty year sentence on the multiple bill conviction.[4]
*148 We note that the original sentence was illegal since it fails to restrict the ineligibility provision to the first year of the sentence as required by LSA-R.S. 14:62.2. See State v. Boowell, 406 So.2d 213 (La. 1981).
Consequently we affirm the conviction on the simple burglary of an inhabited dwelling charge, reverse the finding that the defendant is a fourth felony offender, vacate both the enhanced and the original sentences and remand for resentencing on the conviction affirmed herein.
CONVICTION AFFIRMED, SENTENCE VACATED AND MATTER REMANDED.
NOTES
[1] An earlier trial ended in a mistrial due to possible contamination of jurors by statements made by a potential juror.
[2] State v. Corry, 91-KH-758 (La.App. 5 Cir., Nov. 4, 1991).
[3] Defendant filed a motion to suppress the evidence based on this argument which was denied by the trial court prior to trial.
[4] The trial judge did not actually vacate the sentence but stated, "I understand the effect of the sentence will probably vacate the sentence I have just rendered under the underlying crime."