750 So.2d 252 (1999)
STATE of Louisiana
v.
Robert NEWMAN.
No. 99-KA-841.
Court of Appeal of Louisiana, Fifth Circuit.
December 15, 1999.
*254 Laurie A. White, New Orleans, Louisiana, Attorney for Appellant Robert Newman.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Counsel of Record on Appeal, Terry Boudreaux, Appellate Counsel, Nancy Miller, James F. Scott, III, Trial Counsel, Assistant District Attorneys, Gretna, Louisiana.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, Robert Newman, appeals from his conviction of first degree robbery and his enhanced sentence of life imprisonment at hard labor as a fourth felony offender. We affirm defendant's conviction and finding as a second felony offender. We vacate defendant's sentence and remand.
On January 28, 1998, defendant was charged by Bill of Information with seven counts of first degree robbery, violations of La.R.S. 14:64.1, and with one count of attempted first degree robbery, a violation of La.R.S. 14:27:64.1. Defendant pled not guilty to these charges at his arraignment. On October 23, 1998, defendant withdrew his former plea and entered a new plea of not guilty and not guilty by reason of insanity.
On March 2, 1999, the trial court heard and granted defendant's motion to suppress identification. The trial judge stated that he did not believe there had been any coercion in the identification procedure, but granted the motion to suppress on the basis that the actual photographic lineup shown to the victim had been lost. The trial judge further ruled that the victim could testify that he identified defendant, but no references to a photographic lineup could be made. Trial began that same day on count two only, first degree robbery. At the conclusion of trial, the twelve-person jury returned a verdict of guilty as charged.
Before sentencing the defendant on March 19, 1999, the trial judge denied defendant's motion for new trial. Defendant was thereafter sentenced to serve forty years at hard labor without benefit of probation, parole or suspension of sentence to be served consecutively with any other sentence the defendant may be serving. On March 24, 1999, the defendant filed a motion to reconsider sentence, as well as a motion for appeal.[1] On the same date, the State filed an habitual offender bill of information alleging the defendant to be a fourth felony offender. The State later dismissed the other seven counts in the bill of information.
On April 23, 1999, the defendant waived a reading of the Bill of Information and denied the allegations. Thereafter, defendant filed a written response to the habitual offender bill. After an habitual offender hearing on June 25, 1999, the trial judge found the defendant to be "at least a third time offender."[2] The trial judge then vacated defendant's original sentence and imposed an enhanced sentence of life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence, to be served consecutively with the life sentence the defendant is currently *255 serving.[3] At the conclusion of the habitual offender hearing, defendant orally moved for an appeal and objected to the sentence as excessive. On June 28, 1999, defendant filed a motion to reconsider sentence, as well as a motion for appeal. The trial judge denied the motion to reconsider sentence, but granted the defendant's motion for appeal.
On April 1, 1996, nineteen year old Joshua Elmer (Elmer), was working the night shift at Smoothie King in the Holland Square Shopping Center on Jefferson Highway. A man, whom Elmer recognized as a regular customer, entered the store. The man approached the counter and Elmer asked the man if he needed assistance. The man responded, "`You can help me by emptying the register and giving me the money.'" Thinking the man was playing an April Fools' joke, Elmer replied, "Let me give [you] the whole store." (R., p. 144.) The man, however, told Elmer to "`[e]mpty the f_ _ _ king register'" ... "`[o]r I'm going to blow your head off.'" (R., p. 145). Elmer testified that the man's hand was in his coat pocket and it appeared that the man was holding something in his pocket. Elmer stated that the man raised his right pocket when he demanded the money so Elmer put the money in a bag and gave it to him. The man then told Elmer to turn around and walk to the back of the store. However, Elmer did not turn around because he did not want to be shot in the back. The man then fled the store with the money.
After the robbery, Elmer called the police. He told the police that the robber was six feet tall and was slim, weighed 180 pounds, with dark hair, a dark beard and was wearing a denim jacket. In open court, Elmer identified defendant as the robber.
Deputy Patrick Ramon of the Jefferson Parish Sheriffs Office responded to Elmer's call on the night of the robbery. He testified that Elmer described the robber as a white male, thirty to thirty-five years old, six feet tall, weighing 180 pounds, with medium-length black hair and brown eyes. Deputy Ramon secured the scene and notified the Robbery Division of the Sheriffs Office.
Deputy Russell Brunet of the Jefferson Parish Sheriffs Office testified that, at the time of this robbery, he was a detective assigned to the Robbery Division and followed up on the investigation. He also interviewed Elmer at the scene. Deputy Brunet testified that Elmer told him that defendant had his hand in his jacket as if concealing a weapon. Deputy Brunet testified that he ultimately arrested the defendant for committing the robbery.[4]
On appeal, defendant asserts that he was denied his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 2 of the Louisiana Constitution when the trial judge failed to appoint a sanity commission to determine whether he was sane or insane at the time of the offense. Second, he asserts that his constitutional rights were violated because there was insufficient evidence to support the verdict. Third, he contends that he was erroneously found to be an habitual offender for purposes of La.R.S. 15:529.1, in violation of his due process rights under the Fourteenth Amendment to the United States Constitution and Article I, sec. 2 of the Louisiana Constitution of 1974. Fourth, defendant requests a review of the record for patent error.
Defendant first asserts that the trial judge should have appointed a sanity commission to determine whether he was sane at the time of the offense. The State responds that the trial court had no duty to appoint a sanity commission because *256 the record contained no basis for appointing a sanity commission and defendant did not request that the trial court appoint a sanity commission.
In support of his argument that the trial judge had the duty to appoint a sanity commission, the defendant cites Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In that case, the United Stated Supreme Court reversed the defendant's conviction, holding that when a defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution requires that a State provide access to a psychiatrist on this issue, if the defendant cannot otherwise afford one. Ake v. Oklahoma, 470 U.S. at 70, 87, 105 S.Ct. at 1090, 1098.
The charge in Ake, was first degree murder. The defendants' pre-trial behavior was so bizarre that the trial judge ordered him to be examined by a psychiatrist. He was initially determined incompetent to stand trial, but after being committed to a state hospital, where he received medication, he was determined to be competent. When the proceedings resumed, the defendant's counsel advised the trial court that an insanity defense would be raised. The defense requested that the trial court arrange a psychiatric examination of defendant at the State's expense for the purpose of determining defendant's sanity at the time of the offense. The trial court denied defense's request.
The United States Supreme Court concluded that an indigent defendant is entitled to a psychiatric examination at the State's expense, "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial." Ake v. Oklahoma, 470 U.S. at 74, 105 S.Ct. at 1091. The Ake court concluded that the following factors indicated that the defendant's sanity was likely to be a significant factor at trial, stating at 470 U.S. at 90, 105 S.Ct. 1099-1100 as follows:
For one, Ake's sole defense was that of insanity. Second, Ake's behavior at arraignment, just four months after the offense, was so bizarre as to prompt the trial judge, sua sponte, to have him examined for competency. Third, a state psychiatrist shortly thereafter found Ake to be incompetent to stand trial, and suggested that he be committed. Fourth, when he was found to be competent six weeks later, it was only on the condition that he be sedated with large doses of Thorazine three times a day, during trial. Fifth, the psychiatrists who examined Ake for competency described to the trial court the severity of Ake's mental illness less than six months after the offense in question, and suggested that this mental illness might have begun many years earlier. Finally, Oklahoma recognizes a defense of insanity, under which the initial burden of producing evidence falls on the defendant.
(Footnote omitted.)
Defendant's reliance on Ake is misplaced. In Ake the trial judge denied Ake's request for a psychiatric examination. Here, the trial judge granted the defendant's request for a psychiatric examination. In addition, defendant here had not been declared incompetent to proceed to trial and, in fact, defense counsel specifically stated that defendant's competency to stand trial was not at issue. (R., p. 93). Furthermore, in this case, defendant's sanity was not an issue at trial since he abandoned the insanity defense in favor of a defense of misidentification.
Defendant further argues that the trial judge had a duty to appoint a sanity commission under La.C.Cr.P. art. 650. According to Article 650, the trial court has the discretion to appoint a sanity commission when a defendant enters the dual plea of not guilty and not guilty by reason of insanity. That article provides as follows:
*257 Art. 650. Mental examination after plea of insanity
When a defendant enters a combined plea of "not guilty and not guilty by reason of insanity," the court may appoint a sanity commission as provided in Article 644 to make an examination as to the defendant's mental condition at the time of the offense. The court may also order the commission to make an examination as to the defendant's present mental capacity to proceed. Mental examinations and reports under this article shall be conducted and filed in conformity with Articles 644 through 646.
The necessity of appointing a sanity commission for the purpose of examination and evaluation of the defendant's sanity at the time of the offense lies within the sound discretion of the trial judge. A defendant is not entitled of right to such an examination. State v. Crawford, 410 So.2d 1076, 1077 (La.1982); State v. Buras, 439 So.2d 1187, 1189 (La.App. 4th Cir. 1983).
Defendant initially entered a plea of not guilty, but withdrew that plea to enter the dual plea of not guilty and not guilty by reason of insanity. Defense counsel informed the trial court that the change in the plea was based on new facts that had recently come to light. Defense counsel further advised the trial court that defendant's competency to stand trial was not at issue. Over the State's objection, the trial judge allowed the defendant to change his plea as requested. Subsequently, on December 3, 1998, the trial judge ordered that Dr. Trent Desselles evaluate the defendant. Dr. Desselles reported his findings in a letter dated December 4, 1998 addressed to the trial judge's criminal minute clerk. In this letter, Dr. Desselles advised the trial court that for one hour and forty minutes on December 3, 1998 he had examined defendant upon defense counsel's request. He stated that he had also based his findings on the police reports of the alleged offenses. Dr. Desselles stated his opinion that defendant was not suffering from a mental disease or defect that prevented him from distinguishing right from wrong at the time of the offense. According to Dr. Desselles, defendant:
[s]uffered from depression and/or mood disorder secondary to sedative hypnotic opioid and alcohol use, and abuse or dependence of the above substances. He may also have been suffering from intoxication and a psychotic illness secondary to these substances. However, in my opinion, he did not meet the test for insanity.
(R., p. 47(B)).
Dr. Desselles supported his opinion of defendant's sanity with the following six reasons:
1) The defendant, if psychotic, was so because of a voluntary intoxication. He knew these substances might have this effect from prior experiences with their use.
2) The paranoia he describes does not explain why he would commit a series of robberies.
3) The defendant's depression is not consistent with an insanity plea and does not explain his committing robberies.
4) The defendant has committed similar offenses in the past when his mental health was not an issue.
5) It is unlikely that someone so impaired as to not be able to distinguish right from wrong would be able to plan and execute a series of robberies over a one month period while evading the law.
6) Descriptions of the offenses by victims describe the defendant's efforts to avoid apprehension illustrating, if not his ability to appreciate the wrongfulness of this acts, the unlawfulness of them.
(R., p. 47(B)).
The record reflects that defendant failed to ask for the appointment of a sanity commission at any time, even after this report was filed. The record further reflects that defendant abandoned his plea of *258 not guilty and not guilty by reason of insanity. Prior to trial, the State made a motion in limine requesting that "no mention of the defendant's health, disease, well being, etc., be brought up before the jury." Defense counsel responded, "I don't think that any of that is going to be relevant in this matter, and I do not foresee our presenting evidence, any evidence, with regard to those matters." (R., p. 99). When trial commenced and the clerk read the bill of information, stating that the defendant had entered a plea of "not guilty to the said charge," defendant did not object. (R., p. 137). When the trial judge asked if there were objections to the jury instructions, which included a responsive verdict of "not guilty," but not the dual "not guilty and not guilty by reason of insanity," the defendant stated there was no objection. (R., pp. 64, 188, 199). Additionally, the record reflects that there was no testimony from any witness about the defendant's mental condition at the time of the offense. In fact, as reflected by defendant's closing argument, defendant urged a defense of misidentification, not insanity. (R., pp. 181-183). Based on the foregoing, we find that the trial judge did not abuse his discretion in not appointing a sanity commission to determine the defendant's sanity at the time of the offense.
In his second assignment of error, defendant contends that the evidence was insufficient to prove that he committed the crime of first degree robbery. Defendant argues that the State failed to prove that he was the perpetrator of the robbery because the State failed to introduce any evidence concerning the defendant's arrest. Defendant asserts that the only evidence produced to show that he committed this offense was the victim's testimony. The State responds that evidence presented at trial was legally sufficient to support the defendant's conviction.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722; State v. Styles, 96-897 (La.App. 5th Cir. 3/25/97), 692 So.2d 1222, 1232, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.
Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Lott, 97-1002 (La.App. 5th Cir. 5/27/98), 712 So.2d 289, 291; State v. Rowan, 97-21 (La.App. 5th Cir. 4/29/97), 694 So.2d 1052, 1054. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Lott, 712 So.2d at 291; State v. Rowan, 694 So.2d at 1054.
Defendant contends that the evidence was insufficient because there was no testimony as to how the defendant was arrested for the robbery. In the instant case, Deputy Brunet testified that he ultimately arrested the defendant for committing the robbery. However, the deputy did not testify to the details of the defendant's arrest. The most probable reason for the absence of any details about the defendant's arrest is because the trial judge suppressed the photographic identification since the original photographs in the lineup had been misplaced. Elmer testified at the suppression hearing that he had identified the defendant from a photographic line-up. The State had reconstructed the original photographs, and moved to introduce this line-up in lieu of the original, but the trial judge ruled that the new photographs were inadmissible. The trial judge granted the motion to suppress and ruled that there should not be references *259 during trial to the photographic identification.
Defendant cites no law requiring the State to prove the circumstances of arrest to support a conviction. Although there is frequently testimony on the circumstances of a defendant's arrest at trial, a plain reading of the first degree robbery statute, La.R.S. 14:64.1, reflects that the State is not required to prove the circumstances leading up to the defendant's arrest.
First degree robbery is defined in La. R.S. 14:64.1(A) as follows:
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
The State established that defendant committed the first degree robbery through the testimony of its witnesses, primarily the victim, Elmer, who testified that he recognized the robber because he was a regular customer of the Smoothie King. He said got a "good look" at the robber and had no doubt that defendant was the perpetrator. Elmer identified defendant in open court and said he was "one hundred percent sure" that the defendant was the man who robbed him. (R., p. 153). Elmer testified that he believed that the defendant had a gun in his pocket and that the reason he gave defendant the money was that he believed that he would shoot him. Elmer said he was afraid for his life.
After hearing Elmer's testimony and considering all of the evidence, the jury found defendant guilty of first degree robbery. It is not the function of the reviewing court to assess the credibility of witnesses or to re-weigh the evidence. State v. Bordenave, 95-2328, (La.4/26/96), 678 So.2d 19, 20; State v. Batiste, 96-1010, (La.App. 5th Cir. 1/27/98), 708 So.2d 764, 772, writ denied, 98-913 (La.9/4/98), 723 So.2d 954. Based on the facts in this case, we find that the evidence was sufficient to convict defendant of first degree robbery.
Next, defendant contends that he was erroneously found to be an habitual offender for purposes of La. R.S. 15:529.1. Defendant argues that the State failed to prove that he was the same person who committed the predicate offenses. Defendant asserts that the State relied on fingerprints on the arrest registers that were not connected to the predicate convictions. At the hearing, defendant urged, as he does on appeal, that the arrest registers were evidence of only arrests, not of convictions. The State responds that it proved the identity element by linking the arrest registers to the predicate convictions.
Our review of the record discloses a patent error that we will first address. The habitual offense Bill of Information charges defendant with committing the instant underlying offense on April 1, 1996. It further alleges that defendant was convicted of the third predicate offense on December 1, 1997. Thus, although the present conviction was obtained after the conviction for the third offense, it was committed prior to the conviction for the third predicate offence. The defendant should not, therefore, have been found to be and sentenced as a fourth felony offender, since the commission of the underlying offense occurred before the conviction of the third predicate felony.
La.R.S. 15:529.1(A), provides as follows:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows ... (Emphasis added)
In State ex rel Mims v. Butler, 601 So.2d 649, 653-655 (La.1992), on reh'g, the Louisiana Supreme Court determined that La.R.S. 15:529.1 contains a sequential *260 requirement for enhanced penalties in the sentencing of habitual offenders. See also: State v. Soler, 93-1042 (La.App. 5th Cir. 4/26/94), 636 So.2d 1069, 1084, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055. According to the Mims court, "[t]he cornerstone of that scheme is that felons graduate to second offender status, not by committing multiple crimes, but by committing a crime or crimes after having been convicted." State ex rel Mims v. Butler, 601 So.2d at 650 (emphasis added).
In this case, the record reflects that the third predicate offense arose out of the commission of two counts of first degree robbery, one on March 27, 1996 and one on April 3, 1996. A jury found the defendant guilty of these offenses on December 1, 1997.[5] The underlying offense was committed on April 1, 1996 and the conviction on this offense was obtained on March 2, 1999. Therefore, the defendant had not been through the required sequencing because the commission of the underlying offense (April 1, 1996) occurred before the conviction for the third predicate offense (December 1, 1997).
As a general rule, the remedy would be to vacate the enhanced sentence and to remand for the trial court to correct this problem by re-sentencing the defendant as a third felony offender. See State ex rel Mims v. Butler, 601 So.2d at 655. However, there is an additional problem with the identification element in one of the two remaining predicates.
To prove that a defendant is an habitual offender, the State must establish by competent evidence, that there is a prior felony conviction and that defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092, 1103 (La.1982); State v. Williams, 98-651 (La.App. 5th Cir. 2/10/99), 729 So.2d 14, 19. The State may establish the element of defendant's identity by various means, such as the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the accused with those in the record of prior proceedings or photographs contained in a duly authenticated record. State v. Richmond, 98-1015 (La.App. 5th Cir. 3/10/99), 734 So.2d 33, 37; State v. Bailey, (La.App. 5th Cir. 4/28/98), 713 So.2d 588, 610, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971.
In this habitual offender Bill of Information, the State alleges that the defendant was a fourth felony offender on the basis that he had three predicate convictions and the present underlying conviction. Specifically, the bill alleges that:
(1) defendant plead guilty on July 23, 1990 to possession of cocaine in Jefferson Parish, case number 89-5534;
(2) that he had pled guilty pled guilty to first degree robbery on January 21, 1992 in Jefferson Parish, case number 91-2911;
(3) that he had been convicted of first degree robbery on December 1, 1997 in Orleans Parish, case number 389-689[6]; and
(4) that defendant had been convicted of the first degree robbery on March 2, 1999 in Jefferson Parish, case number 98-645 (the underlying offense). (R., pp. 72-73).
In an attempt to prove these allegations, the State introduced a series of documents and presented the testimony of Sergeant Virgil McKenzie, an expert in the taking of and comparing fingerprints. After *261 Sergeant McKenzie's testimony, the defendant testified that he did not recall entering into the guilty pleas as alleged by the State. At the conclusion of the hearing, the trial judge found the defendant to be "at least a third offender." (R., pp. 260-261).

First Predicate Offense (89-5534)
In connection with this predicate offense, the State introduced exhibit five to prove that defendant pled guilty on July 23, 1990 to possession of cocaine in case number 89-5534 in Jefferson Parish. This exhibit contained, among other documents, a certified copy of the Bill of Information charging Robert Newman with possession of cocaine, as well as a certified copy of the minute entry showing that Robert Newman pled guilty to possession of cocaine through counsel.
The first document in this exhibit is a set of fingerprints, which Sergeant McKenzie testified matched the defendant's fingerprints taken by Sergeant McKenzie on the day of the hearing. (State's exhibit 2) The set of fingerprints in State's exhibit five reflects that the defendant was arrested on November 10, 1989 for possession of cocaine, and battery on a police officer, and had some traffic citations. State's exhibit five is linked to the Bill of Information for that charge, the first predicate offense (case no. 89-5534 representing the 1990 conviction) by defendant's name, the date of the offense and the offense charged, possession of cocaine. However, the set of fingerprints in State's exhibit five does not contain the complaint number which is listed on the Bill of Information thus, the link is missing between the fingerprints and the Bill of Information.
In State v. Bailey, this Court was faced with a similar situation. The State alleged Bailey to be a second felony offender. The State's expert fingerprint witness testified that the fingerprints she took that day from Bailey matched a set of fingerprints from the Louisiana State Police Bureau of Criminal Identification. As in the instant case, the second set of fingerprints was linked to the Bill of Information only by the defendant's name, the date of the offense and the offense charged. The police item number, which was contained in the Bill of Information, was not contained on the second set of prints. This Court concluded that this evidence provided merely a "tenuous" link between defendant and the predicate offense. Nevertheless, this Court concluded that the evidence was sufficient to prove defendant's identity because this evidence was bolstered by the testimony of the assistant district attorney who was present when defendant pled guilty to the predicate offense. State v. Bailey, 713 So.2d at 610-612.
Based on State v. Bailey, in this case, the link between defendant's fingerprints and the first predicate offense is tenuous. Unlike State v. Bailey, there is no other evidence that bolsters the tenuous evidence of defendant's identity in this predicate offense. Thus, the evidence is insufficient to prove the element of the defendant's identity for this predicate offense.[7]

Second Predicate Offense (92-2911)
The Bill of Information in the second predicate offense case reflects that defendant was charged with fifteen counts of armed robbery, five of which were dismissed on January 21, 1992. It also contains *262 seven police complaint numbers, one of which is E-9270-91.[8] The arrest register, bearing item number E-9270-91, is linked to the Bill of Information with this number. This arrest register is also linked to the Bill of Information with the offense charged, first degree robbery, and the date of the offense, May 10, 1991, along with the defendant's name. Sergeant McKenzie testified that the fingerprints on the reverse side of the arrest register bearing complaint number 9270-91 matched the defendant's fingerprints taken the morning of the hearing in the current case. Testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records is sufficient to prove that the defendant was the person convicted of a prior felony. State v. Richmond, supra; State v. Bell, 97-1137 (La.App. 5th Cir. 2/25/98), 709 So.2d 921, 926, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477. Thus, the State met its burden of proving that the defendant was the person who pled guilty to first degree robbery on January 21, 1992.[9]
Based on the above, the State failed to prove two of the four felonies, but did prove defendant to be a second felony offender. One of the felonies which the State failed to prove cannot be cured because it is sequentially defective (the third predicate offense.) However, the State may be able to cure the problem with the identification in the first predicate. Thus, we remand the case for the trial judge to resentence defendant as a second felony offender, or for the State, if it chooses, to cure the identification problem in the first predicate offense (89-5534), and recharge defendant as a third offender within a reasonable time.
Accordingly, defendant's conviction of first degree robbery is affirmed. The enhanced sentence is vacated and the case is remanded. The trial judge must resentence the defendant as a second felony offender. Within a reasonable time, the State may cure the identification problem in the first predicate offense (89-5534) and recharge defendant as a third felony offender.
CONVICTION AND FINDING AS A SECOND FELONY OFFENDER AFFIRMED; SENTENCE VACATED; REMANDED.
NOTES
[1] The record does not reflect a ruling on the motion to reconsider sentence. This is addressed in the error patent section.
[2] This potential error is discussed in assignment of error number two.
[3] The record reflects that the defendant was already serving a life sentence after he "pled guilty" to being a third felony offender in Orleans Parish.
[4] This factual statement is based on the testimony of the State's witnesses. The defendant did not call any witnesses at trial, other than to recall the State's witness, Elmer.
[5] The State, however, did not specify in the habitual offender bill of information which of these counts it relied on as predicate offenses; rather, the State merely alleged in the bill that the defendant was convicted on first degree robbery on December 1, 1997. Regardless of which offense is used, the sequential requirement is not met.
[6] The identity evidence with regard to this third predicate offense will not be discussed. It could not be used to enhance the defendant's sentence because of the sequencing problem discussed above.
[7] We also note two errors that we need not address considering our decision here. The first is that the trial judge stated that defendant was either a third or fourth offender, instead of declaring which number the State proved. This ambiguity causes confusion since the commitment states that defendant was found to be a third offender and where there is a question, the transcript prevails. This Court has vacated habitual offender sentences for this error in the past. See: State v. Jones, 516 So.2d 396, 402 (La.App. 5th Cir. 1987).

In addition, the trial judge failed to properly advise defendant of the prescriptive period for post-conviction relief, as required by La. C.Cr.P. art. 930.8.
[8] The complaint numbers in the bill of information are E-9553-91, D-17558-91, D-11946-91, D-14825-91, E-9270-91, D26460-91, C-27172-91.
[9] In reviewing the arrest registers submitted by the State, only arrest register bearing complaint number "E927091" contains the defendant's name, a date of offense that matches the bill of information, a matching complaint number, as well as fingerprints on the reverse side of the arrest register identified by Sergeant McKenzie as belonging to defendant. While arrest register bearing complaint number "D1482591" contains a matching complaint number, and fingerprints identified by Sergeant McKenzie as defendant's fingerprints, that arrest register does not reflect any date of offense. (Arrest register D1482591 is in the packet reflecting arrest date 5/11/91, and arrest register E927091 is in packet reflecting arrest date 5/13/91).