**Isaac RAMIREZ, Petitioner–Appellee,**

v.

**R.A. CASTRO, Warden, Respondent–Appellant.**

No. 02–56066.

United States Court of Appeals,
Ninth Circuit.

Argued July 18, 2003.

Submitted Jan. 8, 2004.

Filed April 19, 2004.

As Amended April 27, 2004.

Bill Lockyer, Attorney General of the State of California; Robert R. Anderson, Chief Assistant Attorney General; Gary W. Schons, Senior Assistant Attorney General; Raquel M. Gonzalez, Supervising Deputy Attorney General; and Quisteen S. Shum, Deputy Attorney General, San Diego, CA for the respondent-appellant.

Petitioner-appellee Isaac Ramirez in pro se.

Before: NOONAN, KLEINFELD, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

The State of California through its Attorney General, Bill Lockyer, appeals from the district court's judgment granting a writ of habeas corpus to petitioner Isaac Ramirez on the grounds that (1) his 25–years–to–life sentence under California's "Three Strikes" law, Cal.Penal Code §§ 667, 667.5, and 1170.12, violated his Eighth Amendment right to be free from cruel and unusual punishment, and (2) the California Court of Appeal's decision to the contrary was objectively unreasonable under 28 U.S.C. § 2254(d)(1). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm the district court.

In May 1996, Ramirez was caught walking out of a Sears department store in broad daylight carrying a $199 VCR for which he had not paid. He immediately surrendered to authorities and returned the VCR; the encounter was without violence. For this crime, prosecutors could have charged Ramirez with a petty theft misdemeanor, punishable by up to six months in county jail. Instead, prosecutors chose to use two nonviolent shoplifting offenses to which Ramirez pleaded guilty in 1991, for both of which he served one sentence of just over six months in county jail, to charge him with one count of petty theft with a prior theft-related conviction, a "wobbler" offense in California punishable as a felony.

That exercise of prosecutorial discretion had grave consequences for Ramirez. After he was convicted of this "wobbler" felony, the jury found that Ramirez's 1991 "robbery" convictions were "strikes" for purposes of California's Three Strikes law enacted in 1994. The trial court thereafter denied Ramirez's motion to strike one or both of his two prior shoplifts, even though it had indicated before trial that it was inclined to do so, and sentenced Ramirez to 25 years to life in prison, with no eligibility for parole until he had served 25 years. The California Court of Appeal affirmed the sentence.

The sentence imposed upon Ramirez for his three shoplifting offenses is more severe than the sentence he would have faced had any one of his three crimes been murder, manslaughter, or rape. Considering the objective factors of this case and performing the fact-specific analysis of Ramirez's criminal history as we are required to do under Supreme Court precedent, we hold that this is an "exceedingly rare" case in which the sentence imposed is grossly

disproportionate to the crimes committed, in violation of the Eighth Amendment. *Lockyer v. Andrade*, 538 U.S. 63, 77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment). We further hold that the California Court of Appeal's decision affirming Ramirez's sentence was an objectively unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1), and we affirm the judgment of the district court granting Ramirez's writ of habeas corpus.

## I

Because we and the Supreme Court have summarized in detail all of the relevant particularities of charging and sentencing under California's Three Strikes scheme, *see Ewing v. California*, 538 U.S. 11, 15–17, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); *Brown v. Mayle*, 283 F.3d 1019, 1021 (9th Cir.2002); *Andrade v. Attorney General*, 270 F.3d 743, 747–48 (9th Cir. 2001) ("*Andrade I* "), we discuss them only briefly and where relevant here. Unless otherwise noted, all statutory citations are to the California Penal Code.

### A

On October 9, 1991, a criminal complaint was filed in Orange County, California charging Ramirez with two counts of second-degree robbery, i.e., willfully and unlawfully taking personal property "by means of force and fear" in violation of Penal Code §§ 211, 212.5(c), and 213(a)(2), a "serious felony" under § 1192.7(c)(19). Each count was punishable by a prison term of two, three, or five years. § 213(a)(2). The first count was for a

January 1991 shoplift of merchandise from a Lucky's grocery store, for which Ramirez's older sister was also charged with second-degree commercial burglary.[1] The only "force" related to the offense was that the getaway car, driven by a third person, ran over a security guard's foot causing a "minor injury." The second count was for a September 1991 shoplift at a K–Mart department store. The only "force" related to that offense was that Ramirez pushed a security guard away with his open hand as he was running out of the store. Neither incident involved weapons or violence in furtherance of the crime.

Prosecutors offered Ramirez a plea bargain, pursuant to which he would be sentenced to one year in county jail and three years of probation in exchange for his guilty plea to the two felony counts. They allegedly told Ramirez that if he did not take the plea his sister would be sentenced to five years in prison. On October 22, 1991, Ramirez took the plea. By doing so, he could not have agreed to put two "strikes" on his record, as California did not enact its Three Strikes law until more than two and one-half years later. Ramirez was released after serving six months and 20 days in county jail; he completed his probationary period without incident.

### B

After years without any contact with law enforcement, on May 5, 1996, Ramirez shoplifted a $199 VCR from a Sears department store in Montclair, California by placing the VCR in a box, sealing the box with store security tape previously obtained from a friend, and walking out of the store. There was no report of any force or violence associated with the offense. Indeed, when the authorities ap-

---

1. Second-degree commercial burglary is punishable either as a misdemeanor or a felony, by up to one year in county jail or state prison. *See* §§ 459–461.

proached him in the Montclair Plaza parking lot, Ramirez surrendered without resistance, admitted his crime, and returned the VCR. When asked why he had tried to steal the VCR, Ramirez replied, "I don't know. I did something stupid."

For this shoplift of merchandise valued under $400, Ramirez could have been charged with petty theft, a misdemeanor offense punishable by a maximum sentence of six months in jail. *See* §§ 486–490. Instead, San Bernardino County prosecutors charged Ramirez with one count of petty theft with a prior theft-related conviction under § 666. In light of his two prior "serious felony" convictions under § 1192.7,[2] a conviction for this "wobbler" felony offense would bring Ramirez within the scope of California's Three Strikes law, exposing him to a possible sentence of 25 years to life in prison.[3] The "wobbler" offense would be treated as a felony unless and until either the prosecution decided to charge it as a misdemeanor, or the trial court reduced it to a misdemeanor at the preliminary hearing or at sentencing to avoid application of the Three Strikes law. *See Ewing,* 538 U.S. at 17, 123 S.Ct. 1179 (citing Cal.Penal Code §§ 17(b)(5), 17(b)(1), and California cases).

On September 13, 1996, Ramirez moved the trial court to strike one or both of his 1991 convictions pursuant to § 1385(a) and *People v. Romero,* 13 Cal.4th 497, 528–30, 53 Cal.Rptr.2d 789, 808–09, 917 P.2d 628, 647–48 (1996). Although the court denied the pre-trial motion, it stated:

I do think it may be an appropriate case down the road to look at striking one [of the priors because] it does appear [the § ] 211's are more—at least one of them, are more likely confrontation petty theft and not really robbery, notwithstanding the convictions, but frankly I think it's a little premature.

Ramirez's trial began on January 27, 1997, and the jury convicted him on January 28, 1997. On January 29, 1997, in a bifurcated proceeding, a jury found true the allegations that Ramirez suffered two prior serious felony "strikes." The trial court then held a sentencing hearing and considered Ramirez's renewed motion to strike one or both of his priors. Were the court to strike one of his priors, his maximum sentence for the instant offense would have been "twice the term otherwise provided as punishment for the current felony conviction," § 667(e)(1), or six years in prison. *See* §§ 18, 666.

At the hearing, Ramirez admitted committing the petty theft of the VCR, but stated that a sentence of 25 years to life in prison was too severe. He told the sentencing judge that he had worked hard since his 1991 offenses to turn his life around, purchasing two businesses, attending school, receiving certificates in parenting and substance abuse, and establishing child support and visitation. Despite his efforts, his wife lost her job, he lost both businesses and his home, and he was forced to file for bankruptcy. His attorney described Ramirez's nonviolent petty

---

**2.** In 1996, Ramirez's prior second-degree robbery convictions were not "violent" felonies for purposes of a Three Strikes sentence, as only first-degree robbery was then so defined. *See* §§ 667(d)(1) (1996), 667.5 (1996). In 2000, well after Ramirez was convicted and sentenced, the Three Strikes law was amended such that "any robbery" is now a "violent felony" for purposes of a Three Strikes sentence. *See* §§ 667(d)(1) (2000), 667.5 (2000).

**3.** For purposes of a Three Strikes sentence, "[t]he fact that [the defendant's] prior convictions were adjudicated in a single proceeding does not mean that they constitute one prior conviction; two strikes can arise from one case." *People v. Superior Court (Arevalos),* 41 Cal.App.4th 908, 916, 48 Cal.Rptr.2d 833, 838 (1996).

theft of the VCR as "a simple situation of backslide." With respect to the 1991 K–Mart offense, Ramirez admitted that he "may have pushed the gentleman away to run" but stated he did not commit "any violent act" and was not "a violent person." He told the judge that "you're sentencing my children as well because they [will] feel the pain," and that he had already paid the price for the 1991 offenses by serving almost a year in jail for those crimes. Ramirez said even a six-year prison sentence for the instant offense would be "too much."

The judge denied Ramirez's motion to strike, reasoning:

I think possibly one of the problems is that we've treated theft offenses, so lightly over the years, and there's just a whole lot of reasons for that, but it's come to the point where, I think, that many people have just decided it's no big deal, and Mr. Ramirez has indicated he thinks that even five or six years for this crime would be too much.

And in looking at your history, it seems that there has been a constant pattern, and the Court is just not confident that it won't continue to be a pattern. Yes, there was a five-year gap, but I also understand that part of that time Mr. Ramirez was out of the state, and I'm not going to assume that there's anything that happened that we didn't know about, but it seems that he came right back to it and committed this theft offense again, and the pattern, the priors were thefts from stores, they were shoplifts.

It just seems to be a constant pattern, and Mr. Ramirez indicates that he's straightened his life out, but it didn't seem to stop him from doing this crime. If this had just been a sudden impulse kind of thing, it would be different, but this was clearly planned, and there was a sophistication involved in bringing the [security] tape in and the way he planned out the picking up the box and walking out and looking around and the fact that he planned ahead. He was going to—he had a buyer for the object already.

I mean, what's happened is that Mr. Ramirez has become a professional thief, and it's just real clear from all the evidence.

I did indicate earlier that I had an intention to strike one of the priors prior to trial, but that was before I heard all the facts and realized the planning and sophistication that did go into this crime, and at this point I am not inclined to strike either or both of the priors.

Mr. Ramirez stated that I'm sentencing his children, but I'm not the one that's doing that. I'm afraid you're the one who did that when you committed this offense.

I know you didn't realize when you pled to those prior robberies that this would ultimately be the consequence, but there certainly was plenty of publicity about this law since it was passed, and you should have known better, but I think you just had the attitude that, like you said, interpreting what you said, that it was really no big deal, and I've really already paid enough for that theft, in other words, it was just some minor thing. Well, the People of the state has [*sic*] decided that it's not going to be a minor thing anymore if somebody continues to commit these crimes, and they've decided that the penalty should be 25 to life, and I think the circumstances in this case fit that, and I don't feel compelled to strike those priors.

The judge then sentenced Ramirez to 25 years to life in prison under the Three Strikes law, which required Ramirez to serve 25 years before he would become

eligible for parole. *See* § 667(e)(2)(A)(ii). He was incarcerated at Ironwood State Prison, a Security Level III facility for inmates with "several prior prison terms or significant behavioral problems."[4] The court denied his subsequent motion for resentencing.

On direct appeal, Ramirez claimed, *inter alia*, that his sentence violated the Eighth Amendment's prohibition of cruel and unusual punishment. On September 8, 1998, the California Court of Appeal affirmed Ramirez's conviction and sentence in an unpublished, reasoned opinion. The court rejected Ramirez's Eighth Amendment claim as follows:

> The state and federal Constitutions prohibit imposition of cruel and unusual punishment. [citation] A determination of whether a sentence constitutes cruel and unusual punishment involves application of the principles stated in *Harmelin v. Michigan* (1991) 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836, and *In re Lynch* (1972) 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921. As both cases make clear, the determination is fact specific. [citations]

> We note that successful challenges to sentencing proportionality are exceedingly rare. [citation] This case is not one of those rarities because the punishment is not being imposed solely for the current theft offense. It is also merited based on defendant's status as a repeat offender. Recidivism poses a danger to society, justifying the imposition of longer sentences for subsequent offenses. (*Rummel v. Estelle* (1980) 445 U.S. 263, 284, 100 S.Ct. 1133, 63 L.Ed.2d 382.) Here, defendant used force on two previous occasions to accomplish his thievery. After two attempts at rehabilitation which defendant did not take advantage of, he has now committed another felony. His recidivism poses a danger to society and he has shown that lesser punishment does not deter his criminality. Therefore, his punishment as a repeat offender under the Three Strikes law is not grossly disproportionate to the offense for which he was punished. (*See, e.g., People v. Cooper* (1996) 43 Cal.App.4th 815, 822–23, 51 Cal.Rptr.2d 106; *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836.) Accordingly, the sentence does not constitute cruel and unusual punishment under our state and federal Constitutions.

Ramirez petitioned for review in the California Supreme Court, which summarily denied his petition on December 16, 1998.

Ramirez thereafter petitioned for state habeas relief. The California Court of Appeal and Supreme Court summarily denied his habeas petitions on January 14, 2000 and April 26, 2000, respectively.

## C

On May 24, 2000, Ramirez filed this habeas petition. On March 22, 2002, the magistrate judge filed its report and recommendation. Analyzing Ramirez's Eighth Amendment claim under *Harmelin v. Michigan*, 501 U.S. 957, 961, 994–96, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Solem v. Helm*, 463 U.S. 277, 303, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); and *Rummel v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and tracking the analysis of our then-controlling decisions in *Andrade I* and *Brown*, the magistrate judge found that Ramirez's sentence: (1) raised an inference of gross disproportion-

---

**4.** Cal. Dept. of Corrections, "Secure Prisons," *at* http://www.cdc.state.ca.us/Communications Office/PublicSafetyPS/securePrisons.asp.

ality to the gravity of Ramirez's nonviolent offense, for which he would have received a sentence of one year in jail or three years in prison but for California's Three Strikes law; (2) was more severe than the sentences for most violent crimes in California, including second-degree murder, voluntary manslaughter, rape, and sexual assault on a minor, and, further, if Ramirez's prior convictions had been for these violent offenses instead of a theft-related offense, he would have received only six months in jail; and (3) was more severe than the sentence he would have received in any other state with the possible exception of Louisiana.

The magistrate judge then found that the California Court of Appeal's decision rejecting Ramirez's Eighth Amendment claim was "an unreasonable application of clearly established federal law" because it failed: (1) properly to analyze the claim under *Harmelin, Solem,* and *Rummel;* (2) to consider the gross disparity between Ramirez's "core" misdemeanor of petty theft and the sentence imposed; (3) to consider the "double whammy" of Ramirez's prior theft convictions and the operation of the Three Strikes law, which elevated the "core" misdemeanor to a "wobbler" felony third strike; and (4) to consider the gross disparity between Ramirez's sentence for nonviolent petty theft, and sentences for similar crimes in other jurisdictions and more violent crimes in California. In the alternative, the magistrate judge found the state court's decision was "contrary to established federal law" because it failed to apply some or all of the required analysis from *Harmelin, Solem,* and *Rummel,* and erroneously compared Ramirez's sentence to his entire criminal history rather than his crime for nonviolent petty theft. The magistrate judge therefore recommended that the district court grant Ramirez's petition under 28

U.S.C. § 2254(d)(1), rejecting all of Ramirez's other claims.

On June 14, 2002, the district court adopted the magistrate's report and recommendation in its entirety. On June 17, 2002, the district court entered its judgment granting Ramirez a writ of habeas corpus and ordering his release from custody forthwith. On June 27, 2002, after serving nearly five and one-half years of his sentence, Ramirez was released from prison. He has lived in California under parole supervision for nearly two years without incident.

The State appealed. The parties completed their briefing on February 24, 2003, with Ramirez filing his answering brief *in pro se.* The matter was calendared for oral argument on July 18, 2003 in Pasadena, California.

On March 5, 2003, the Supreme Court decided *Ewing,* and *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) ("*Andrade II*"), reversing and overruling our decisions in *Andrade I* and *Brown.* We directed the parties to file letter briefs addressing the implications for this case of *Andrade II.* Ramirez filed his *pro se* brief, along with seven testimonial letters from pastors of his church and other congregation members, all of which referenced Ramirez's commitment to his wife and young daughters, his church, and his future without criminal activity.

On July 18, 2003, we held oral argument. Ramirez argued before us on his own behalf. The courtroom was filled with members of Ramirez's church, his pastor, and others who wanted to attest to his recovery from previous drug and alcohol abuse and his spotless record since being released from prison. Ramirez told the Court that he had been a model inmate during his nearly six years in prison, receiving no write-ups and serving as an inmate representative. He said that he

had benefitted from this time in prison, which he described as a "healing period," using it to free himself of addiction, to develop a deep and lasting spirituality, and to set his life on the right course. The State's counsel argued that Ramirez was a dangerous recidivist for whom the State had a strong interest in returning to prison for the remainder of his Three Strikes sentence.

The panel deferred submission of the case and requested that the Warden's counsel discuss with California Attorney General Bill Lockyer whether some resolution of the appeal could be reached through negotiation with Ramirez in light of his nonviolent petty theft triggering offense, his minimal, nonviolent criminal history, and the facts that he had already served almost six years in prison and had been released for more than one year without incident. We directed the parties to submit case status reports by September 4, 2003.

On August 22, 2003, the State filed its status report, which included a declaration from Attorney General Lockyer. Despite his status as the chief elected law enforcement officer of the State and Head of California's Department of Justice, *see* Cal. Const. Art. V, § 13 and Art. XX, § 3; Cal. Gov't Code §§ 12510, 12511, and the Three Strikes law itself, which requires state officials to exercise discretion in its application "in the furtherance of justice," § 667(f)(2), the Attorney General represented that he was without authority to dismiss or otherwise resolve this federal appeal, declaring that he had "no authority to negotiate a settlement of this case."

Following receipt of Ramirez's status report, the appeal was submitted on January 8, 2004.

## II

■ We review *de novo* a district court's decision to grant a petition for ha-

beas corpus under 28 U.S.C. § 2254. *Alcala v. Woodford*, 334 F.3d 862, 868 (9th Cir.2003). We may affirm the decision to grant a petition "on any ground supported by the record, even if it differs from the rationale of the district court." *Id.* (quoting *Paradis v. Arave*, 240 F.3d 1169, 1175–76 (9th Cir.2001)).

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), govern Ramirez's habeas petition. Under AEDPA, habeas relief is proper only if the state court's adjudication of the merits of the habeas claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Andrade II*, 538 U.S. at 70–71, 123 S.Ct. 1166. A state court's decision is contrary to clearly established federal law if it (1) applies a rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of facts materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principles from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. The petitioner must demonstrate not only that the state court's application of governing federal law was erroneous, but also that it was objectively unreasonable. *Andrade II*, 538 U.S. at 75, 123 S.Ct. 1166.

## III

■ "The Eighth Amendment, which forbids cruel and unusual punishments,

contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " *Ewing*, 538 U.S. at 20, 123 S.Ct. 1179 (quoting *Harmelin*, 501 U.S. at 996–97, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment)).[5] "The 'precise contours' of the proportionality principle 'are unclear' " and it is applicable "only in the 'exceedingly rare' and 'extreme' case." *Andrade II*, 538 U.S. at 72–73, 123 S.Ct. 1166 (quoting *Harmelin*, 501 U.S. at 998, 1001, 111 S.Ct. 2680 (Kennedy, J. concurring in part and concurring in judgment)).

In the recent decisions of *Ewing* and *Andrade II*, the Supreme Court analyzed gross disproportionality claims brought by two prisoners sentenced under California's Three Strikes law. To provide necessary context for these decisions, we begin with a review of the Court's decisions in *Rummel*, *Solem*, and *Harmelin*.

In *Rummel v. Estelle*, the Supreme Court held that Texas did not violate the Eighth Amendment by sentencing a three-time felon to life in prison with the possibility of parole after 12 years. 445 U.S. at 265, 268, 100 S.Ct. 1133. Rummel's first felony was fraudulent use of a credit card to obtain $80 worth of goods, punishable by a minimum of 2 years and maximum of 10 years in prison, for which he pleaded guilty and was sentenced to 3 years. After he was released from prison, Rummel committed his second felony—passing a forged check in the amount of $28.36, an offense punishable by a minimum of 2 years and maximum of 5 years in prison, for which he pleaded guilty and was sentenced to 4 years. After his second release from prison, Rummel committed his third felony—obtaining $120.75 by false pretenses, which, by itself, was punishable by a minimum of 2 years and a maximum of 10 years. Rummel, however, was charged and convicted under Texas's recidivist statute, which required a mandatory sentence of life in prison upon conviction of a third felony. *Id.* at 265–66, 100 S.Ct. 1133. Under Texas law, Rummel would be eligible for parole after 12 years. *Id.* at 268, 100 S.Ct. 1133.

The Supreme Court upheld Rummel's sentence against his Eighth Amendment challenge, noting that under Texas's recidivist sentencing scheme, Rummel qualified for his sentence only because he was convicted of and served time in prison for two successive felonies. *Id.* at 278, 100 S.Ct. 1133. Thus, Rummel had "twice demonstrate[d] that conviction and actual imprisonment [did] not deter him from returning to crime [after being] released." *Id.* His sentence was imposed "only after shorter terms of actual imprisonment ... proved ineffective." *Id.* at 278 n. 17, 100 S.Ct. 1133. Noting that the recidivist sentencing scheme served the legitimate penal purposes of deterring "repeat offenders" and incapacitating "one who repeatedly commits criminal offenses serious enough to be punished as felonies," *id.* at 284, 100 S.Ct. 1133, the Court held Rummel's sentence was not grossly disproportionate in violation of the Eighth Amendment: "Having twice imprisoned him for felonies, Texas was entitled to place upon Rummel the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Id.*

In *Solem v. Helm*, the Supreme Court held unconstitutional a sentence of life imprisonment without parole for a seven-time

---

5. The Eighth Amendment "applies against the States by virtue of the Fourteenth Amendment." *Harmelin*, 501 U.S. at 962, 111 S.Ct. 2680 (opinion of Scalia, J., joined by Rehnquist, C.J.) (citing *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)).

nonviolent felon. 463 U.S. at 303, 103 S.Ct. 3001. Helm's extensive "nonviolent" criminal history in South Dakota, which spanned eleven years, included the following: three convictions of third-degree burglary (breaking into a dwelling house or any building or vehicle within the curtilage of a dwelling house at night with intent to commit a crime), each punishable by up to 15 years in state prison; one conviction of obtaining money under false pretenses, punishable by up to 3 years in state prison or 1 year in county jail; one conviction of grand larceny, punishable by up to 10 years in state prison or 1 year in county jail; and one conviction of a third-offense driving while intoxicated. *Id.* at 279–80, 103 S.Ct. 3001. The Court did not note Helm's time served for any of these convictions. Helm's seventh felony was for uttering a "no account" check in the amount of $100, which by itself would have been punishable by up to 5 years in state prison. Instead, Helm was charged and convicted under South Dakota's recidivist statute, which provided, after three prior convictions "in addition to the principal felony," for a maximum sentence of life in prison without the possibility of parole, which was the sentence imposed upon Helm. *Id.* at 281–82, 103 S.Ct. 3001.

The Supreme Court affirmed a decision of the Eighth Circuit holding the sentence grossly disproportionate to Helm's crime. *See id.* at 284, 303, 103 S.Ct. 3001. Recognizing both the "exceedingly rare" nature of its holding, citing *Rummel,* 445 U.S. at 272, 100 S.Ct. 1133, and the "broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes," *Solem,* 463 U.S. at 289–90, 103 S.Ct. 3001, the Court announced:

[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 292, 103 S.Ct. 3001. In performing such objective analysis, the Court further endorsed consideration of "other accepted principles that courts may apply in measuring the harm caused or threatened to the victim or society," such as the "absolute magnitude of the crime" and the offender's "culpability." *Id.* at 292, 103 S.Ct. 3001.

Applying the first objective criterion, the Court found Helm's sentence grossly disproportionate to his crime of uttering a $100 "no account" check, "one of the most passive felonies a person could commit," notwithstanding his extensive criminal history because all of his prior offenses were "nonviolent" and none of them involved "a crime against a person." *Id.* at 296–97, 103 S.Ct. 3001. Because Helm faced life in prison without the possibility of parole, the Court emphasized that Helm's sentence was "far more severe" than the life sentence considered in *Rummel,* in which parole was available after 12 years of imprisonment. *Id.* at 297, 100 S.Ct. 1133.

Applying the second objective criterion, the Court found that Helm, for his minimal crime, was given a sentence as harsh as that for violent crimes in South Dakota such as murder, first-degree manslaughter, first-degree arson, rape and kidnaping. *Id.* at 298, 100 S.Ct. 1133. Applying the third criterion, the Court found that Nevada was the only other state that might have given Helm the same sentence for his crime, but there was no evidence Nevada had actually ever given such a sentence to someone "whose prior offenses were so minor." *Id.* at 299–300, 100 S.Ct. 1133.

In *Harmelin v. Michigan,* the Supreme Court analyzed a gross disproportionality

claim raised by a first-time offender convicted of possessing 672 grams of cocaine and sentenced to life in prison without the possibility of parole. 501 U.S. at 961, 111 S.Ct. 2680. Although there was no majority opinion, a majority of the Court rejected Harmelin's claim that his sentence violated the Eighth Amendment's proportionality principle. Justice Kennedy authored a concurring opinion that Justices O'Connor and Souter joined. This opinion would become "the rule of *Harmelin*," e.g., *Andrade I*, 270 F.3d at 757, and would later guide the Court's Eighth Amendment analysis in *Ewing* and *Andrade II*.

Refusing to question the central holdings of *Rummel* and *Solem,* Justice Kennedy's *Harmelin* concurrence held: "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680 (citations omitted). Justice Kennedy then identified four "common principles" of proportionality review: (i) the primacy of the legislature in determining appropriate punishment; (ii) the variety of legitimate penological schemes; (iii) the inevitably divergent theories of sentencing in our system of federalism; and (iv) the use of objective factors to guide proportionality review. *Id.* at 999–1001, 111 S.Ct. 2680. Because Harmelin was convicted of possessing more than one and one-half pounds of cocaine, Justice Kennedy found that "[f]rom any standpoint, this crime falls in a different category from the relatively minor, nonviolent crime at issue in *Solem.*" *Id.* at 1002, 111 S.Ct. 2680. Furthermore, because Harmelin's crime "threatened to cause grave harm to society," *id.,* Justice Kennedy

found that an inference of gross disproportionality under *Solem* had not been raised and there was no need to perform any comparative analysis with respect to other sentences in Michigan and across the nation. *Id.* at 1005, 111 S.Ct. 2680.

With these cases in mind, we turn to the Supreme Court's recent decisions in *Ewing* and *Andrade II*.

In *Ewing v. California,* the Supreme Court affirmed the constitutionality of Ewing's sentence of 25 years to life in prison under California's Three Strikes law, rejecting Ewing's argument that his sentence was grossly disproportionate to his most recent crime—grand theft of golf clubs valued at $1200, which crime Ewing committed while on parole from a 9–year prison term for first-degree robbery and multiple counts of residential burglary. 538 U.S. at 17–19, 123 S.Ct. 1179. Looking beyond Ewing's most recent offense, Justice O'Connor's plurality opinion [6] summarized his extensive criminal history, which had become increasingly violent over the course of nearly ten years, including convictions for multiple thefts and burglaries, felony grand theft auto, battery, possession of drug paraphernalia, appropriating lost property, unlawful possession of a firearm, and trespassing. *Id.* at 18, 123 S.Ct. 1179. All told, Ewing had served nine separate terms of incarceration in state prison and committed most of his crimes while on probation or parole. *Id.* at 30, 123 S.Ct. 1179. Most troubling, while committing his prior "strike" offenses of first-degree robbery and three residential burglaries, Ewing accosted a victim in the mail room of an apartment complex, claiming to have a gun, before he forced the victim back to his apartment at

---

6. Justices Rehnquist and Kennedy joined the opinion. Justices Scalia and Thomas filed opinions concurring in the judgment, but holding that the Eighth Amendment contains no proportionality principle. *See id.* at 31–33, 123 S.Ct. 1179.

knife-point to steal the victim's money and credit cards. *Id.* at 19, 123 S.Ct. 1179.

Against this factual backdrop, the plurality recounted the Court's holdings in *Rummel, Solem,* and *Harmelin,* recognizing that Justice Kennedy's concurrence in *Harmelin* provided the guiding principles. *Id.* at 23–24, 123 S.Ct. 1179. The plurality then discussed the legitimate purposes of California's Three Strikes law. First, it recognized that the law reflected California's "judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime." *Id.* at 25, 123 S.Ct. 1179. It noted that in 1996, the 233 three-strikes offenders in California averaged five prior felony convictions apiece, with about 84 percent having been convicted of at least one violent crime, including "17 homicides, 7 attempted slayings, and 91 sexual assaults." *Id.* at 26, 123 S.Ct. 1179 (citing a report in the *Sacramento Bee* ). Second, the plurality recognized that the law served California's legitimate interest in deterring crime. *Id.* at 27–28, 123 S.Ct. 1179.

The plurality then turned to Ewing's Eighth Amendment claim, noting at the outset that his triggering offense of grand theft "was certainly not 'one of the most passive felonies a person could commit.'" *Id.* at 28, 123 S.Ct. 1179 (quoting *Solem,* 463 U.S. at 296, 103 S.Ct. 3001). Rejecting Ewing's claim that his sentence was grossly disproportionate to his crime, the plurality held:

> In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions.

*Id.* at 29, 123 S.Ct. 1179. Having thus ruled that Ewing's sentence did not raise an inference of gross disproportionality, the plurality did not perform a comparative intrajurisdictional or interjurisdictional analysis under *Solem. See id.* at 41–43, 123 S.Ct. 1179 (Breyer, J., dissenting).

In *Andrade II,* the Supreme Court reversed a decision by a three-judge panel of our Court granting Andrade's petition for a writ of habeas corpus on the ground that his Three Strikes sentence violated the Eighth Amendment's gross disproportionality principle. 538 U.S. at 77, 123 S.Ct. 1166. Applying the AEDPA standard, the Supreme Court held the California Court of Appeal's decision affirming Andrade's sentence was neither contrary to, nor an unreasonable application of, clearly established federal law. *Id.* at 73–77, 123 S.Ct. 1166.

For stealing a total of $153 worth of videotapes from two different K–Mart department stores on separate occasions in November 1995, Andrade was sentenced, in light of his prior theft-related offenses, to two consecutive Three Strikes sentences of 25 years to life, with no eligibility for parole until he served 50 years in prison. *Id.* at 66, 123 S.Ct. 1166. Like the plurality in *Ewing,* the Court looked beyond Andrade's two most recent convictions to detail his extensive criminal history, during which he had been "in and out of state and federal prison since 1982." *Id.* at 66, 123 S.Ct. 1166.

> In January 1982, [Andrade] was convicted of a misdemeanor theft offense and was sentenced to 6 days in jail with 12 months' probation. Andrade was arrested again in November 1982 for multiple counts of first-degree residential burglary. He pleaded guilty to at least three of those counts, and in April of the following year he was sentenced to 120 months in prison. In 1988, Andrade was

convicted in federal court of transportation of marijuana and was sentenced to eight years in federal prison. In 1990, he was convicted in state court for a misdemeanor petty theft offense and was ordered to serve 180 days in jail. In September 1990, Andrade was convicted again in federal court for the same felony of transportation of marijuana and was sentenced to 2,191 days in federal prison. And in 1991, Andrade was arrested for a state parole violation—escape from federal prison. He was paroled from the state penitentiary system in 1993.

*Id.* at 66–67, 123 S.Ct. 1166 (internal quotation marks and citations omitted).

As a threshold matter, the Court held that the "only relevant clearly established law" for purposes of its AEDPA review of the California Court of Appeal's decision rejecting Andrade's Eighth Amendment challenge was the "gross disproportionality principle" developed in *Rummel* and *Solem* and distilled in Justice Kennedy's concurrence in *Harmelin,* the "precise contours" of which "are unclear." *Id.* at 72–73, 123 S.Ct. 1166 (quoting *Harmelin,* 501 U.S. at 998, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment)). The Court then held that the state court's decision was not contrary to these precedents because it had appropriately relied upon *Rummel* in affirming Andrade's sentence, and his case was not materially indistinguishable from either *Rummel* or *Solem.* *Id.* at 73–74, 123 S.Ct. 1166. Finally, the Supreme Court held the state court's decision was not an unreasonable application of these precedents because the proportionality principle affords legislatures broad discretion in determining appropriate sentences for recidivists, and it was not objectively unreasonable for the state court to decide in light of Andrade's criminal history that his sentence was not outside the "contours" of the proportionality principle and thus not the "extraordinary case" resulting in a sentence that violated the Eighth Amendment. *Id.* at 76–77, 123 S.Ct. 1166.[7]

With all of these Supreme Court decisions in mind, we now turn to Ramirez's case.

## IV

### A

■ Unlike the Three Strikes sentences analyzed in *Ewing* and *Andrade II,* Ramirez's extreme sentence raises an inference of gross disproportionality when compared to the gravity of his most recent offense and criminal history.

That Ramirez's sentence is harsh is beyond any dispute. Indeed, it appears there are only two more severe sentences available to anyone convicted of a crime in California: life without the possibility of parole and death. Because the 25–year minimum of his indeterminate life sentence may not be reduced by credit for good behavior or working while in prison, *see In re Cervera,* 24 Cal.4th 1073, 1080–82, 103 Cal.Rptr.2d 762, 767–69, 16 P.3d 176, 181–82 (2001); Ramirez's "real time term" of 25 years in prison is more than twice the length of the real time term at issue in *Rummel,* where parole was available after 12 years. *See Ewing,* 538 U.S. at 37–40, 123 S.Ct. 1179 (Breyer, J., dissenting) (discussing the difference in length of the real time prison term as a "critical" distinction between *Rummel,* where habeas relief was

---

7. The Supreme Court also rejected our previous definition of "objectively unreasonable" for purposes of AEDPA review to mean "clearly erroneous" because that definition "fail[ed] to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Andrade II,* 538 U.S. at 75, 123 S.Ct. 1166.

denied, and *Solem*, where it was granted). In fact, reviewing Ramirez's identical sentence in *Ewing*, the Supreme Court appeared to accept it as harsh, but found the sentence justified in Ewing's case nonetheless due to his extensive criminal history, which included, among numerous other crimes, a residential burglary at knifepoint. *See Ewing*, 538 U.S. at 30, 123 S.Ct. 1179 ("To be sure, Ewing's sentence is a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated.").

The question therefore is whether Ramirez's extreme sentence is justified by the gravity of his most recent offense and criminal history. We hold that it is not.

The core conduct of Ramirez's most recent offense, his nonviolent shoplift of a $199 VCR, is misdemeanor petty theft punishable by up to six months in county jail. Ramirez's offense was chargeable as a "wobbler" felony only by virtue of his prior theft-related conviction. While perhaps not "one of the most passive felonies a person could commit," *Solem*, 463 U.S. at 296, 103 S.Ct. 3001, Ramirez's nonviolent petty theft is nevertheless akin to the triggering felony in *Solem* (uttering a "no account" check for $100), and is easily distinguished from the offense triggering a life sentence in *Harmelin* (possession of over one and one-half pounds of cocaine). Because Ramirez's nonviolent shoplift did not "threaten[] to cause grave harm to society," *Harmelin*, 501 U.S. at 1003, 111 S.Ct. 2680, it clearly would not by itself justify the sentence he received. But be-

cause Ramirez was sentenced as a recidivist under the Three Strikes law, "in weighing the gravity" of his offense in our proportionality analysis, "we must place on the scales not only his current felony," but also his criminal history. *Ewing*, 538 U.S. at 29, 123 S.Ct. 1179.

Ramirez's prior criminal history is comprised solely of two 1991 convictions for second-degree robbery obtained through a single guilty plea, for which his total sentence was one year in county jail and three years probation.[8] These second-degree robberies were "serious" felonies within the meaning of § 1192.7 (and thus for purposes of a Three Strikes sentence), but these crimes were nonviolent in nature. No weapons were involved in the offenses. The "force" reported in these shoplifting crimes—the basis by which prosecutors could charge them as second-degree robberies—was a "minor injury" caused when somebody else drove over the foot of a grocery store security guard, and that Ramirez pushed a K–Mart security guard out of his way as he fled the store. As the sentencing court initially and correctly found, these offenses are more accurately described as "confrontation petty theft and not really robbery, notwithstanding the convictions."

The true nature of these crimes is further reflected in the one-year jail sentence offered by prosecutors in exchange for Ramirez's guilty plea to the two felonies. Each count of second-degree robbery exposed Ramirez to a possible prison sentence of two, three, or five years. § 213(a)(2). In California, only felonies

---

**8.** Although prosecutors argued at sentencing that Ramirez had "a long history of contacts with the law" including misdemeanor convictions as a juvenile, there is no such evidence in the record and the sentencing court did not make any finding that would support that argument. Moreover, it does not appear that the sentencing court took any other offense into account in determining Ramirez's Three Strikes sentence, describing Ramirez's criminal history as a "pattern" of "thefts from stores, [i.e.,] shoplifts" notwithstanding the "five-year gap" between his previous shoplifts and most recent offense.

are punishable by incarceration in state prison, while a misdemeanor is punishable by six months in county jail. *See* §§ 17, 19. Thus, the one-year jail sentence prosecutors offered, which is also the maximum Ramirez could have received were he instead charged and convicted of two counts of misdemeanor petty theft, *see* §§ 486–490, is not consistent with a desire to punish Ramirez's crimes as "serious felonies."

Moreover, this single, one-year jail sentence was the only period of incarceration ever imposed upon Ramirez prior to his Three Strikes sentence. Before receiving a sentence of 25 years to life in state prison, Ramirez had spent one period of six months and 20 days in county jail; he had never been sentenced to or served time in state prison.

The gravity of Ramirez's criminal history thus pales in comparison to the lengthy recidivist histories discussed above in *Solem, Ewing*, and *Andrade*. In each of those cases, the recidivist had been in and out of prison on numerous occasions having received substantial sentences for multiple felony convictions, including such serious and violent felonies as third-degree residential burglary and third-offense driving while intoxicated (*Solem*); grand theft auto and residential burglary at knife-point (*Ewing*); and first-degree residential burglary, federal drug transportation charges, and escape from federal prison (*Andrade*). Ramirez's criminal history is also minimal in comparison to the statewide averages for Three Strikes offenders recognized by the Supreme Court in *Ewing*. *See* 538 U.S. at 27–28, 123 S.Ct. 1179 (summarizing a 1996 *Sacramento Bee* study that found California's Three Strikes offenders averaged five prior felony convictions apiece with the vast majority—about 84 percent—having been convicted of at least one

violent crime such as homicide, attempted murder, and sexual assault).

Ramirez's criminal history is also considerably less serious than that of the recidivist in *Rummel*, who received his sentence of life in prison, with the possibility of parole after just 12 years, only after being convicted of and serving time in state prison for two successive felonies. The Supreme Court found this fact significant in justifying the proportionality of Rummel's sentence. *See* 445 U.S. at 284, 100 S.Ct. 1133 ("Having twice imprisoned him for felonies, Texas was entitled to place upon Rummel the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State."). By comparison, Ramirez, whose Three Strikes sentence requires him to serve 25 years in prison before becoming eligible for parole, had only one period of incarceration in county jail in his entire criminal history. Critically, and unlike any of the recidivists in *Rummel, Solem, Ewing*, and *Andrade*, Ramirez had never been sentenced to nor served any time in state prison prior to committing the instant petty theft.

We recognize that California's legislature has primacy and great latitude in determining appropriate punishment, and that California's Three Strikes law may serve the State's legitimate goals of incapacitating serious and violent recidivist criminals and deterring recidivist crime in California. *See Ewing*, 538 U.S. at 26–28, 123 S.Ct. 1179. But we find these state interests less compelling in this particular case, in which the "seriousness" of Ramirez's felony convictions is belied both by the nonviolent nature of those offenses and by the fact that the State offered Ramirez jail time instead of seeking to punish him with a sentence in state prison. Indeed, it is doubtful that California's Three Strikes law, passed largely in response to the infa-

mous 1993 kidnaping and murder of 12–year–old Polly Klaas, *see Ewing,* 538 U.S. at 14–15, 123 S.Ct. 1179, was ever intended to apply to a nonviolent, three-time shoplifter such as Ramirez. *Cf. Ewing,* 538 U.S. at 51, 123 S.Ct. 1179 (Breyer, J., dissenting) (noting that the statute's definitions make it clear that the object of the law is to reduce "crimes against the person, crimes that create danger of physical harm, and drug crimes," not to incapacitate those who commit petty or even serious property crimes).

In any event, neither the "harm caused or threatened to the victim or society," nor the "absolute magnitude" of Ramirez's three shoplifts justifies the Three Strikes sentence in this case. *Solem,* 463 U.S. at 293, 103 S.Ct. 3001. These "objective factors" and those discussed above demonstrate that Ramirez's sentence is grossly disproportionate to the crimes he committed in violation of the Eighth Amendment. *Harmelin,* 501 U.S. at 1000–01, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment). In other words, while a sentence of 25 years to life for felons with recidivist histories such as those in *Ewing* and *Andrade* does not violate the gross disproportionality principle, that sentence weighed against the gravity of Ramirez's offense raises an inference of gross disproportionality in light of the nature and paucity of his criminal history.

Because this is the extremely rare case that gives rise to an inference of gross disproportionality, we turn to a comparative analysis of Ramirez's sentence. *See Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment).

## B

Under an intrajurisdictional analysis, we "compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Solem,* 463 U.S. at 291, 103 S.Ct. 3001.

First, it is worth noting that but for the Three Strikes enhancement, Ramirez would have been subject to a maximum sentence of one year in county jail or up to three years in prison for his petty theft with a prior theft-related conviction. §§ 18, 666. Moreover, even under the Three Strikes regime, if Ramirez's prior crimes had been violent felonies, such as murder, assault, or rape, instead of his shoplifting "robberies," Ramirez's petty theft of the VCR would not have been chargeable as a "wobbler" felony under § 666, and the most severe sentence he could have received would have been six months in county jail for misdemeanor petty theft. §§ 486–490.

Second, California punishes far more serious and violent crimes much less severely than the Three Strikes sentence imposed upon Ramirez for his three shoplifting crimes. *See, e.g.,* § 190 (second-degree murder punishable by 15 years to life in prison); § 193 (voluntary manslaughter punishable by up to 11 years); § 264 (rape punishable by up to 8 years); § 288 (sexual assault on a minor punishable by up to 8 years). The availability of parole for prisoners convicted of these and other serious and violent offenses results in even less severe sentences. *See, e.g.,* Cal.Code Regs. tit. 15, §§ 2320 and 2329 (detailing California Board of Prison Terms' suggested base ranges of imprisonment for a wide variety of offenses). For example, the Board of Prison Terms regulations recommend that parole be made available after 19–21 years to a prisoner convicted of second-degree murder involving the most aggravated circumstances,

e.g., "severe trauma inflicted with deadly intensity" such as "beating, clubbing, stabbing, strangulation" or "multiple wounds inflicted with a weapon" upon a victim that had "little or no personal relationship" with the prisoner or whose death occurred during a "robbery, rape, or other felony." *Id.* § 2403(c). Moreover, the 19 to 21-year base term for such an offense may be reduced by postconviction credit of up to four months for each year served, i.e., a reduction of one year for every three years served. *Id.* § 2290. For a second-degree murderer with the least aggravated circumstances of conviction, the suggested base term is 15–17 years, less credit for time served. Thus, the regulations recommend much less serious penalties for far more violent crimes as compared to the sentence imposed upon Ramirez for his three shoplifting offenses, which requires him to serve 25 years before he is eligible for parole.

The State argues that we should compare Ramirez's sentence to recidivist offenders sentenced under the Three Strikes law rather than first-time violent crime offenders, and that "when a proper comparison is made, it is apparent that [recidivist] defendants with more serious or violent triggering offenses are punished more harshly than Ramirez." Although we agree that comparison to other recidivist sentences is relevant, the State misses the point when it argues, for example, that a hypothetical defendant with two strikes would receive an even harsher Three Strikes sentence if that defendant used a firearm in his triggering offense. This hypothetical case is not relevant to our intrajurisdictional comparative analysis of Ramirez's sentence. What would be relevant is a case in which another defendant received a 25 years to life sentence after committing just three shoplifting crimes, or having spent only one brief period of incarceration in county jail for his

"strikes," or having some similar minor criminal history. The State has not cited such a case and we have not found any. *Cf. People v. Romero,* 99 Cal.App.4th 1418, 1427–30, 122 Cal.Rptr.2d 399, 407–08 (2002) (upholding against Eighth Amendment challenge a 25 years to life sentence imposed for shoplifting a magazine, where defendant's criminal history included several prison sentences and convictions for, among other offenses, lewd conduct with a child under the age of 14 and battery on a peace officer).

Moreover, an internal policy memorandum dated December 19, 2000 from Los Angeles County District Attorney Steve Cooley to all Deputy District Attorneys in the County, which was attached as an exhibit to Attorney General Lockyer's declaration in this case, makes clear that Ramirez probably would not have faced a Three Strikes sentence at all if he had committed his petty VCR theft just a couple of years later, and on the other side of the San Bernardino / Los Angeles county line:

> The Three Strikes law, Penal Code Section Section 1170.12(a)-(d), provides a powerful tool for obtaining life sentences in cases involving habitual criminal offenders. However, unless used judiciously, it also has the potential for injustice and abuse in the form of disproportionately harsh sentences for relatively minor crimes. The Three Strikes statutory scheme appropriately authorizes the use of prosecutorial discretion in its implementation. As prosecutors, it is our legal and ethical obligation to exercise this discretion in a manner that assures proportionality, evenhanded application, predictability and consistency. Moreover, the potential for coercive plea-bargaining must be avoided. Penal Code Section 1170.12(d)(2) authorizes prosecutors to

move to dismiss or strike a qualifying prior felony conviction in the furtherance of justice pursuant to Penal Code Section 1385. In this context, "in furtherance of justice" requires consideration of the constitutional rights of the defendant and the interests of society. [citations] Proper exercise of prosecutorial discretion protects society and preserves confidence in an respect for the criminal justice system.

*Cf.* Greg Krikorian, *Three–Strikes Law Has Little Effect, Study Says,* L.A. Times, Mar. 5, 2004, at B1. (recognizing that District Attorney Cooley declines to prosecute "most nonviolent offenses and lesser drug charges as third strikes," even though Los Angeles County generates approximately 40% of the Three Strikes cases in California).

Thus, our intrajurisdictional comparative analysis of Ramirez's sentence indicates that it is excessive for the crimes he has committed, which supports our conclusion that his sentence violates the gross disproportionality principle of the Eighth Amendment.

## C

Under an interjurisdictional analysis, we "compare the sentences imposed for commission of the same crime in other jurisdictions." *Solem,* 463 U.S. at 291, 103 S.Ct. 3001.

At the outset, we note that the State concedes "the statute employed against Ramirez is the most stringent in the nation." Nevertheless, the State argues, in passing, there are "at least four other states" with recidivist sentencing schemes "not significantly distinguishable, in a Constitutional sense, from California's as it relates to Ramirez." Because the State cites *Andrade I,* 270 F.3d at 762–65, for this proposition, we assume the State refers to Rhode Island, Texas, West Virgi-

nia, and Louisiana. But none of these states would have imposed a sentence upon Ramirez anywhere near as harsh as 25 years to life.

Rhode Island requires that a defendant be "sentenced on two (2) or more occasions to serve a term in prison" to qualify for the recidivist 25–year sentence enhancement. *See* R.I. Gen. Laws § 12–19–21(a). Ramirez of course was sentenced only once and incarcerated on only one occasion in county jail for his previous crimes. Thus, had Ramirez shoplifted the $199 VCR from a store in Rhode Island, the most severe sentence he would have faced is five years in prison for shoplifting with a prior conviction. *See id.* § 11–41–20.

Texas and Louisiana have "sequential conviction" requirements in their recidivist sentencing statutes, which renders them inapplicable to Ramirez because he was convicted of his two prior felonies on the same day. *See* Tex. Penal Code Ann. § 12.42(d) (enhanced sentence of life in prison upon third felony conviction only if "the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final"); *State v. Butler,* 601 So.2d 649, 650 (La.1992); *State v. Corry,* 610 So.2d 142, 147 (La.Ct.App.1992) (holding that convictions entered on the same day fail to meet the sequential requirement and thus are treated only as a single prior felony for purposes of sentence enhancement under La.Rev.Stat. Ann. § 15:529.1). Thus, the maximum sentence Ramirez would have faced in Texas is 10 years in prison, if convicted of a third-degree felony, *see* Tex. Penal Code Ann. §§ 12.35(a), 12.34(a), 31.03(e)(4)(D), with parole available after serving as little as two and one half years, less time for good conduct. *See* Tex. Govt. Code Ann. § 508.145(f). In Louisiana, Ra-

mirez's maximum sentence likely would have been four years in prison. *See* La. Rev.Stat. Ann. §§ 14:67(B)(3), 15:529(A)(1)(a).

West Virginia's constitution "contains an express requirement of proportionality in sentencing which mandates a stricter review of recidivist sentencing than that required by the United States Supreme Court under federal constitutional principles." *State v. Deal*, 178 W.Va. 142, 358 S.E.2d 226, 231 (1987). A life sentence under the state's habitual offender statute, W. Va.Code § 61–11–18(c), therefore violates the state constitution when the triggering offense is nonviolent. *See id.* (vacating life sentence imposed under habitual offender statute where "the appellant's most recent conviction involved no violence or threat of violence to the person" even though he had a previous conviction for a violent felony). Thus, Ramirez's nonviolent petty theft of the VCR would not have qualified him for punishment under West. Virginia's habitual offender statute. He likely would have faced a minimum of one year and a maximum of ten years in prison if convicted of a third shoplifting offense. *See* W. Va. Code § 61–3A–3(c).

Finally, we note that the maximum sentence Ramirez could have received under the United States Sentencing Guidelines, which also take into account the criminal history of a defendant, is seven months in prison—a term that pales in comparison with his Three Strikes sentence. Assuming Ramirez had been charged under the general theft statute, 18 U.S.C. § 641, his offense level would have been 6 under USSG § 2B1.1 (theft of property valued under $5,000). For his prior sentence of incarceration for less than one year and one month, he would have received 2 criminal history points under USSG § 4A1.1. Ramirez would not have qualified for a

career offender enhancement under the Guidelines because his petty VCR theft was neither a crime of violence nor a controlled substance offense. *See* USSG § 4B1.1(a). Thus, Ramirez would have fallen at the very bottom of Zone B on the Table, making him eligible for a prison sentence of one to seven months. *See* USSG Table. Of course, Ramirez would also have been eligible for a sentence of probation in lieu of imprisonment. *See* USSG §§ 5B1.1(a)(2), 5C1.1(c)(3).

Our interjurisdictional comparative analysis thus supports the conclusion that Ramirez's sentence is unconstitutionally excessive. Our conclusion does not trample upon California's authority, as the State argues, to punish recidivist criminals under the most stringent sentencing laws in the country, nor does it invalidate California's Three Strikes law. On the contrary, we simply conclude that there does not appear to be any other jurisdiction in the country that would have imposed a sentence upon Ramirez comparable to 25 years to life in prison, which supports our conclusion that his sentence is grossly disproportionate.

For all of the foregoing reasons, we believe the California Court of Appeal's determination that Ramirez's sentence did not violate the Eighth Amendment is incorrect. We therefore turn to whether Ramirez is entitled to habeas relief under AEDPA.

**V**

█ Habeas relief is available to Ramirez only if the California Court of Appeal's decision on the merits of his gross disproportionality claim was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). The gross disproportionality principle is the only "governing legal principle" that is "clearly established" for pur-

poses of our AEDPA review of the state court's decision. *See Andrade II,* 538 U.S. at 72, 123 S.Ct. 1166. As discussed above, the "precise contours" of the gross disproportionality principle are "unclear," and it is applicable only in the "exceedingly rare case." *Id.* at 72–73, 123 S.Ct. 1166.

We begin our AEDPA analysis by noting that the California Court of Appeal's decision is not "contrary to" clearly established federal law, as the Supreme Court has defined that term. *See Andrade II,* 538 U.S. at 73, 123 S.Ct. 1166; *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. Although the state court did not apply *Solem* in denying Ramirez's gross disproportionality claim, it did apply *Rummel* and *Harmelin;* such an application does not "contradict[ ] the governing law" set forth in the relevant Supreme Court cases. *See Andrade II,* 538 U.S. at 73, 123 S.Ct. 1166 ("[I]t was not contrary to our clearly established federal law for the California Court of Appeal to turn [only] to *Rummel* in deciding whether a sentence is grossly disproportionate.... Indeed, *Harmelin* allows a state court to reasonably rely on *Rummel* in determining whether a sentence is grossly disproportionate.") (citations omitted). Moreover, the state court did not "confront a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[ ] at a result different from" that precedent. *Id.* at 73, 123 S.Ct. 1166; *Williams,* 529 U.S. at 405, 120 S.Ct. 1495. As discussed above, Ramirez's case is readily distinguishable from *Rummel, Solem,* and *Harmelin.*

Thus, our final question is whether the state court, having correctly identified the gross disproportionality principle, unreasonably applied it to the unique facts of Ramirez's case. We hold that it did. *See Andrade II,* 538 U.S. at 75–76, 123 S.Ct. 1166 ("Section 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced."); *Williams,* 529 U.S. at 407, 120 S.Ct. 1495 (same).

Purporting to apply *Rummel* to this case, the state court held that Ramirez's sentence was not grossly disproportionate to the crimes he committed because he was a recidivist and the State had given him "two attempts at rehabilitation which [he] did not take advantage of." This characterization of Ramirez's criminal history is factually erroneous, as his two 1991 shoplifts were charged in a single criminal complaint. Incarcerated but once for those offenses, for a period of just over six months in county jail, he plainly did not have "two attempts at rehabilitation."

More important, this error reflects an objectively unreasonable attempt to bring Ramirez's case within the scope of *Rummel. See* 445 U.S. at 284, 100 S.Ct. 1133 ("Having twice imprisoned him for felonies, Texas was entitled to place upon Rummel the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State."). By any account, it was unreasonable for the state court to overlook the fact that Ramirez had not been incarcerated on successive occasions for his two prior felonies. This was an important fact in *Rummel,* which the Supreme Court expressly recognized. *See id.* at 278, 100 S.Ct. 1133 (Rummel had "twice demonstrate[d] that conviction and actual imprisonment [did] not deter him from returning to crime [after being] released."); *id.* at 278 n. 17, 100 S.Ct. 1133 (Rummel's life sentence with the possibility of parole after 12 years was justified "only after shorter terms of actual imprisonment ... proved ineffective."). Although we note above that "sequential con-

victions" are a prerequisite for application of several of the most severe recidivist sentencing schemes in the country, we do not hold that the Constitution imposes such a requirement upon all Three Strikes sentences in California. We simply hold that it was objectively unreasonable in this case for the state court to obscure Ramirez's criminal history to avoid in its disproportionality analysis the facts that Ramirez had neither served time in state prison nor been given two attempts at rehabilitation—factors that were critical to the analysis in *Rummel*.

The state court also cited *Harmelin* for the proposition that Ramirez's sentence was not grossly disproportionate to his crimes because "his recidivism poses a danger to society and he has shown that lesser punishment does not deter his criminality." Although *Harmelin* did not involve recidivist sentencing, the "common principles" of proportionality review set forth in Justice Kennedy's concurrence, 501 U.S. at 999–1001, 111 S.Ct. 2680, have been applied in that context. *See Ewing*, 538 U.S. at 23–28, 123 S.Ct. 1179, *Andrade II*, 538 U.S. at 72–73, 123 S.Ct. 1166. We therefore have analyzed Ramirez's sentence according to these principles, recognizing that California's determination of appropriate punishments is entitled to deference and that our system of federalism leaves room for a wide range of sentencing schemes, but that the fact-specific inquiry as to whether this is an "extraordinary case," *Andrade II*, 538 U.S. at 77, 123 S.Ct. 1166, compels us to conclude that Ramirez's sentence is not justified by the gravity of his past and present offenses.

The California Court of Appeal's decision, on the other hand, is not "informed by 'objective factors to the maximum possible extent.'" *Harmelin*, 501 U.S. at 1000, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment) (quoting

*Rummel*, 445 U.S. at 274–75, 100 S.Ct. 1133). The state court's decision omits the most critical objective factors in this case: (1) the nonviolent nature of Ramirez's three crimes, none of which involved a weapon; (2) his minimal criminal history, comprised of one felony conviction for petty theft with a prior and two felony convictions charged in one criminal complaint to which he pleaded guilty; and (3) that he had been incarcerated on but one occasion for six months in county jail—not state prison—before he was sentenced to 25 years to life. Because of its factual incorrectness and failure to include these other most basic, objective Supreme Court factors in its analysis—factors that demonstrate Ramirez's sentence violates the gross disproportionality principle of the Eighth Amendment—the California Court of Appeal's decision is an objectively unreasonable application of the Supreme Court's gross disproportionality precedents.

\* \* \*

Ramirez's sentence of 25 years to life in prison is grossly disproportionate to the offenses he committed. The California Court of Appeal's decision to the contrary is an objectively unreasonable application of clearly established federal law because it erroneously characterizes and otherwise fails to consider the unique, objective factual circumstances of Ramirez's case. Because this is indeed the "exceedingly rare" case, Ramirez is entitled to habeas relief under 28 U.S.C. § 2254(d)(1).

**AFFIRMED.**

KLEINFELD, Circuit Judge, dissenting:

I respectfully, and regretfully, dissent.

I agree with the majority that Ramirez's sentence is inappropriately harsh. For shoplifting a $199 videocassette recorder,

having previously shoplifted twice before, he was sentenced to spend between 25 years and the rest of his life in prison, with no eligibility for parole until he has served at least 25 years. Even Hammurabi limited the penalty for an eye to an eye.

True, Ramirez's recidivism suggests that if he is not more or less permanently caged, he may do something like this again. Some people commit relatively small crimes, without graduating to more serious ones, but appear unable to be deterred. The sentencing goals of incapacitation and deterrence are thus served by the harsh sentence. But those are not the only goals. The goals of reaffirming societal norms and of just retribution are disserved as much by an excessively harsh sentence as by an excessively lenient one. Furthermore, excessively harsh sentences such as this one create a potential incentive for a defendant facing a third-strike conviction to take drastic measures to avoid a conviction. This raises a risk of obstruction of justice and even murder of witnesses in cases where such things would otherwise be inconceivable.

Even the reasonable victim of such a crime would not want to visit such harsh punishment on the criminal. Nor would a reasonable person favor spending hundreds of thousands of dollars to incarcerate Ramirez for decades to protect stores from the occasional $200 shoplifting. And despite his criminality, a fair sentence cannot, of course, ignore the impact on Ramirez. Our societal norm against stealing is not intense enough to justify a sentence comparable to what people get for rape or murder. What Ramirez has done, repeatedly, is just not bad enough to justify

wasting most of the rest of his life in a cage.

As the majority points out, Ramirez argued his own case before us pro se. He did it so well that I did not realize until well into his argument that he was the petitioner and not a lawyer for the petitioner. My impression from the record and from our extensive colloquy with this man during oral argument is that he is a good and intelligent man whose self control occasionally gives way under the stresses of life to a criminal impulse that he expresses by stealing something from a store. The 5½ years he already served for his most recent crime seem like an adequate social response even with his having done it twice before.

But these are all thoughts I would have were I the sentencing judge. I am not. We are not. The question whether a writ of habeas corpus should issue to a state prison warden is quite different from whether the sentence is justifiable. It is even different from whether we think the sentence is grossly disproportionate to the crime. We can only grant relief if the sentence was grossly disproportionate *and* if the state court's determination that it was not grossly disproportionate was contrary to or an unreasonable application of Supreme Court law.[1]

The majority opinion acknowledges that the California Court of Appeal did not fail to apply controlling Supreme Court law.[2] The majority then carefully works through the Supreme Court decisions—which require considerable parsing—to determine whether the state court unreasonably applied them. In *Rummel,* life with parole eligibility in 12 years for three small thefts was not disproportionately harsh.[3] In *So-*

---

1. *Lockyer v. Andrade,* 538 U.S. 63, 73–77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

2. Maj. Op. at 773–774.

3. *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

*lem,* life without parole *was* disproportionately harsh for a petty thief with a more serious record, whose "uttering" a false check crime was "one of the most passive felonies a person could commit." [4] In *Ewing,* another theft case, the Court held on direct review that 25 to life was not disproportionately harsh, but there the petitioner's record showed a substantially higher level of dangerousness. [5] The petitioner in *Andrade* was, like Ramirez, a repeat petty shoplifter who got 50 to life, on two counts. His record also showed a higher level of dangerousness because of a prison escape and marijuana offenses. [6]

Under the majority's analysis, the question whether the sentence is cruel and unusual comes down roughly to which of these Supreme Court cases in point is most closely analogous, because, as the Supreme Court itself pointed out in *Andrade,* the verbal formulas in the cases are largely indeterminate. [7] Parsing these cases, the majority concludes, understandably, that Ramirez's sentence is a violation of the Eighth Amendment. The problem is that such an analysis is just the type of subtle parsing that necessarily conflicts with the deference we owe to state judgments about which punishment is appropriate. [8] We are not supposed to cut so finely when evaluating the proportionality of a sentence, particularly when our review is through a petition for habeas corpus and is governed by AEDPA.

In the end, what prevents me from joining the majority, which I would very much like to do, is the word "unreasonable" in AEDPA. The Supreme Court has said, on several occasions, that "unreasonable" means not just wrong, but so wrong as to be "objectively unreasonable." [9] The Court told us in *Andrade* that even "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." [10] That is quite a standard. I can easily say (and have said) that I would have reached a different conclusion from the sentencing court, and perhaps I could bring myself to say that the state appellate court erred. And though this is much harder in light of the indeterminacy of the Supreme Court language and the arguability of which of the Court's precedents is

**4.** *Solem v. Helm,* 463 U.S. 277, 296, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (internal quotation omitted).

**5.** *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).

**6.** *See Andrade,* 538 U.S. at 66–67, 123 S.Ct. 1166.

**7.** *Id.* at 76, 123 S.Ct. 1166.

**8.** *See id.* (noting that in the Eighth Amendment context, "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle—the 'precise contours' of which 'are unclear.' " (quoting *Harmelin v. Michigan,* 501 U.S. 957, 998, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment))); *Solem,* 463 U.S. at 290 n. 16,

103 S.Ct. 3001 ("Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.... In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."); *id.* at 294, 103 S.Ct. 3001 ("It is clear that a 25–year sentence generally is more severe than a 15–year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not." (footnote omitted)); *Rummel,* 445 U.S. at 279–82, 100 S.Ct. 1133.

**9.** *Andrade,* 538 U.S. at 76, 123 S.Ct. 1166; *see also Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**10.** *Andrade,* 538 U.S. at 75, 123 S.Ct. 1166.

analogous, perhaps I could bring myself to join in a conclusion that the state appellate court clearly erred. But I cannot bring myself to say that the state court was "objectively unreasonable" in its application of *Andrade, Harmelin, Solem, Ewing,* and *Rummel.*

The practical significance of *Andrade* is not a precise formulation of what the test is for a sentence so disproportionate as to violate the Eighth Amendment. *Andrade* concedes that the "precise contours" of the Court's own proportionality principle "are unclear." [11] *Andrade* means, as a practical matter, that the federal courts, on habeas review, have extremely limited authority over the harshness of state sentences. It operates more as a federalism decision than as an Eighth Amendment decision. Ramirez's sentence would stand, under my reluctant reading, not because it is just as between California and Ramirez, but because it is lawful as between the state and federal judiciaries. Thus, I do not think we have the authority to do what the majority does, and what I would like to do.

11. *Id.* at 76, 123 S.Ct. 1166 (internal quotation omitted).